# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 5, 2003 Session

## CREW ONE PRODUCTIONS, INC. v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commission**
**No. 068301     W. R. Baker, Commissioner**

---

**No. M2003-00585-COA-R3-CV - Filed February 25, 2004**

---

This is an employment tax case.  The State of Tennessee appeals the determination of the Tennessee Claims Commission that Crew One Productions is not liable for Tennessee employment tax by virtue of a federal safe harbor provision known as section 530.   We reverse, holding Tennessee is not bound by the federal safe harbor provision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Reversed**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General and Heather C. Ross, Senior Counsel, for the appellant, State of Tennessee.

Willis Jackson, Knoxville, Tennessee, for the appellee, Crew One Productions, Inc.

## OPINION

Crew One Productions, Inc. ("Crew One") coordinates technical staffing for concert and entertainment events in Chattanooga and Nashville, Tennessee, and Atlanta, Georgia.  In 1998, the Tennessee Department of Labor and Workforce Development ("DLWD") conducted an audit of Crew One to determine Crew One's compliance with Tennessee's Employment Security Law. DLWD initially limited its audit to 1998, the year Crew One indicated it had begun to employ people in Tennessee.  The DLWD determined Crew One' stage hands were employees and not independent contractors, and that Crew One accordingly was liable for Tennessee state employment taxes.  The DLWD assessed taxes of $9,409.43.

Crew One requested a redetermination.  It argued that it had obtained section 530 relief from federal employment taxes pursuant to the Federal Revenue Act of 1978, and was entitled to a parallel exemption from state employment taxes.  DLWD determined that the federal section 503 provision did not bind the state.  Upon further investigation, DLWD discovered that Crew One had begun employing personnel in Tennessee in 1995.  DLWD  accordingly determined that Crew One was

liable for past employment taxes, plus interest, for the years 1995 through 1999. This totaled $48,164.53. The DLWD continues to assess Crew One for employment taxes.

On May 2, 2000, Crew One filed a complaint for recovery of state employment taxes and determination of liability in the Tennessee Claims Commission. Crew One initially requested a factual determination that the workers at issue were independent contractors. The State contends that Crew One withdrew this request, and that the parties stipulated that the only issue before the Commission was whether section 530 applies to Tennessee state taxes. Crew One submits that it did not stipulate that its workers were not independent contractors.

Following a trial on January 9, 2003, the claims commission found in favor of Crew One. The Commission interpreted Tennessee Code Annotated § 50-7-104(b) as requiring the state to apply federal tax law. It accordingly held Crew One was not liable for Tennessee state employment tax. The commissioner thus entered judgment for Crew One, ordering the State to return all funds paid under protest by Crew One and awarding Crew One post judgment interest of ten percent. The State now appeals.

### *Issue Presented*

The parties present the following issue for review by this Court:

> Whether the Tennessee Claims Commission erred in holding that the State is required under Tenn. Code Ann. § 50-7-104(b) to relieve an employer from state employment tax liability if the employer has obtained Section 530 relief from federal employment tax liability.

### *Standard of Review*

Our review of a direct appeal from the claims commission is governed by the Tennessee Rules of Appellate Procedure. Tenn. Code Ann. § 9-8-403(a)(1)(1999); *Beare Co. v. Tennessee*, 814 S.W.2d 715, 717 (Tenn. 1991). The issue presented in this appeal is an issue of law. Thus, our review is *de novo* with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

### *Section* **530**

Section 530 is a safe harbor provision found at 26 U.S.C. § 3401 Note.[1] Section 530 protects an employer from employment tax liability resulting from retroactive reclassification of its workers

---

[1] Section 530 of Pub.L. 95-600, as amended Pub.L. 96-167, § 9(d), Dec. 29, 1979, 93 Stat. 1278; Pub.L. 96-541, § 1, Dec. 17, 1980, 94 Stat. 3204; Pub.L. 97-248, Title II, § 269(c)(1), (2), Sept. 3, 1982, 96 Stat. 552; Pub.L. 99-514, § 2, Title XVII, § 1706(a), Oct. 22, 1986, 100 Stat. 2095, 2781; Pub.L. 104-188, Title I, § 1122(a), Aug. 20, 1996, 110 Stat. 1766.

as employees by the IRS where the employer had a reasonable basis to treat its workers as independent contractors. Thus, even where a worker may be determined to be an employee under the common law test, if the employer had a reasonable basis to treat the worker as an independent contractor, section 530 shields the taxpayer from federal employment tax liability for those tax periods. H.R. Conf. Rep. No. 100-1104, vol. II (1988). The section provides:

(a) Termination of certain employment tax liability.--

(1) In general.--If--
(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).--For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:
(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or
(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

(3) Consistency required in the case of prior tax treatment.--Paragraph (1) shall not apply with respect to the treatment of any individual for employment tax purposes for any period ending after December 31, 1978, if the taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for any period beginning after December 31, 1977.

(4) Refund or credit of overpayment.--If refund or credit of any overpayment of an employment tax resulting from the application of paragraph (1) is not barred on the date of the enactment of this Act [Nov. 6, 1978] by any law or rule of law, the period for filing a claim for refund or credit of such overpayment (to the extent attributable

to the application of paragraph (1)) shall not expire before the date 1 year after the date of the enactment of this Act [Nov. 6, 1978].

(b) Prohibition against regulations and rulings on employment status.--No regulation or Revenue Ruling shall be published on or after the date of the enactment of this Act [Nov. 6, 1978] and before the effective date of any law hereafter enacted clarifying the employment status of individuals for purposes of the employment taxes by the Department of the Treasury (including the Internal Revenue Service) with respect to the employment status of any individual for purposes of the employment taxes.

(c) Definitions.--For purposes of this section--

(1) Employment tax.--The term 'employment tax' means any tax imposed by subtitle C of the Internal Revenue Code of 1986 [formerly I.R.C.1954, section 3101 et seq. of this title].

(2) Employment status.--The term 'employment status' means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor (or other individual who is not an employee).

(d) Exception.--This section shall not apply in the case of an individual who, pursuant to an arrangement between the taxpayer and another person, provides services for such other person as an engineer, designer, drafter, computer programmer, systems analyst, or other similarly skilled worker engaged in a similar line of work.

(e) Special rules for application of section.--

(1) Notice of availability of section.--An officer or employee of the Internal Revenue Service shall, before or at the commencement of any audit inquiry relating to the employment status of one or more individuals who perform services for the taxpayer, provide the taxpayer with a written notice of the provisions of this section.

(2) Rules relating to statutory standards.--For purposes of subsection (a)(2)--
(A) a taxpayer may not rely on an audit commenced after December 31, 1996, for purposes of subparagraph (B) thereof unless such audit included an examination for employment tax purposes of whether the individual involved (or any individual holding a position substantially similar to the position held by the individual involved) should be treated as an employee of the taxpayer,
(B) in no event shall the significant segment requirement of subparagraph (C) thereof be construed to require a reasonable showing of the practice of more than 25 percent of the industry (determined by not taking into account the taxpayer), and

(C) in applying the long-standing recognized practice requirement of subparagraph (C) thereof--

(I) such requirement shall not be construed as requiring the practice to have continued for more than 10 years, and

(ii) a practice shall not fail to be treated as long-standing merely because such practice began after 1978.

(3) Availability of safe harbors.--Nothing in this section shall be construed to provide that subsection (a) only applies where the individual involved is otherwise an employee of the taxpayer.

(4) Burden of proof.--

(A) In general.--If--

(I) a taxpayer establishes a prima facie case that it was reasonable not to treat an individual as an employee for purposes of this section, and

(ii) the taxpayer has fully cooperated with reasonable requests from the Secretary of the Treasury or his delegate,

then the burden of proof with respect to such treatment shall be on the Secretary.

(B) Exception for other reasonable basis.--In the case of any issue involving whether the taxpayer had a reasonable basis not to treat an individual as an employee for purposes of this section, subparagraph (A) shall only apply for purposes of determining whether the taxpayer meets the requirements of subparagraph (A), (B), or (C) of subsection (a)(2).

(5) Preservation of prior period safe harbor.--If--

(A) an individual would (but for the treatment referred to in subparagraph (B)) be deemed not to be an employee of the taxpayer under subsection (a) for any prior period, and

(B) such individual is treated by the taxpayer as an employee for employment tax purposes for any subsequent period,

then, for purposes of applying such taxes for such prior period with respect to the taxpayer, the individual shall be deemed not to be an employee.

(6) Substantially similar position.--For purposes of this section, the determination as to whether an individual holds a position substantially similar to a position held by another individual shall include consideration of the relationship between the taxpayer and such individuals.

26 U.S.C. § 3401 Note.

Following an audit of Crew One in Georgia for the 1993 tax year, in March 1997, the Internal Revenue Service ("IRS") notified Crew One: "[t]he decision has been made to afford section 530 relief to Crew One Productions as it relates to the reclassification of its workers." Crew One's

argument, as we perceive it, is that this 1997 letter affording it section 530 protection for the tax year 1993 is evidence that Crew One would be relieved from liability for federal unemployment taxes for the tax years at issue here, 1995 through 1999. Crew One further asserts that the language of Tennessee Code Annotated §§ 50-6-102 and 104, stating that Tennessee's Employment Security Law is construed "in pari materia" with federal law, requires Tennessee to relieve Crew One of liability for Tennessee employment taxes where it would be relieved from liability for federal employment taxes under section 530. Crew One asserts that section 530 is a codified section of the Federal Revenue Act of 1978, and that Tennessee must provide a parallel safe harbor provision.

We must begin our analysis with a discussion of section 530. First, section 530 is a "nickname" for a safe harbor provision found in a note to 26 U.S.C. § 3401. *WG&L Tax Dictionary* (2002). It is not part of the Federal Unemployment Tax Act ("FUTA") codified at 26 U.S.C. § 3301 through § 3311. Further, contrary to Crew One's assertion, section 530 remains a note following 26 U.S.C. § 3401. It is not a codified section of the Internal Revenue Code. *Ahmed v. United States*, 147 F.3d 791, 795 n.4 (8th Cir. 1998).

Second, section 530 does not provide an exemption from federal employment taxes. *See id.* Rather, it provides a safe harbor to protect employers from liability for back federal employment taxes resulting from retroactive reclassification by the IRS of the employer's workers as employees where the employer, in good faith, had a reasonable basis to treat the workers as independent contractors and fulfilled tax filing requirements. *See id.* at 797; *Professional Samplers, Inc. v. South Carolina Employment Sec. Comm'n*, 513 S.E.2d 374, 377 (S.C. Ct. App. 1999)(internal citations omitted). The Small Business Job Protection Act of 1996 (Pub.L. 104-188, August 20, 1996, 110 Stat. 1755) reversed the IRS position that a determination that the worker is an employee and not an independent contractor must be made before section 530 could apply. Staff of Joint Committee on Taxation, *Present Law and Issues Relating to Classification of Workers as Employees or Independent Contractors,* 23-96 (Jnt. Comm. Print 1996); 14 Stand. Fed. Tax Rep. (CCH) ¶ 33,502, ¶ 33,538.026. However, the language of the section itself provides relief only in those cases where an employer erroneously has classified employees. *Ahmed*, 147 F.3d at 797.

Third, section 530 relief is available only where the employer did not treat the worker as an employee for the particular tax period; treated similarly situated workers consistently as independent contractors; filed all required federal tax returns in a manner consistent with such treatment; had a reasonable basis for not treating the worker as an employee. *Id.* Examples of a reasonable basis include judicial precedent; a prior IRS determination; a longstanding, recognized practice within a significant segment of the industry. Section 530(a)(2)(A)(B)(C), 26 U.S.C. § 3401 Note. Section 530 relief will not apply if the employer did not timely file the appropriate federal Form 1099 with respect to the workers involved. Rev. Proc. 85-18, 1985-1 C.B. 518 (1985).

Fourth, section 530 applies on a periodic basis. Section 530(a)(1)(B), 26 U.S.C. § 3401 Note; *see Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir. 1998). It does not "confer eternal immunity from employment tax liability." *Ahmed*, 147 F.3d at 797. It simply provides a safe harbor for those discrete periods in which the employer reasonably treated a worker as an independent

contractor. *Id.* Modifications to section 530 pursuant to the Small Business Jobs Protection Act of 1996 provide that section 530 relief may be available for prior tax periods where the employer subsequently has changed its treatment of its workers. Section 503(e)(5)(A)(B), 26 U.S.C. § 3401 Note.

Fifth, the affording of section 530 relief is not a determination that an employer's workers are independent contractors and not employees. Although section 530 does not require a prior determination by the IRS that workers are employees, it provides relief only to employers who erroneously classify their workers as independent contractors. *Ahmed*, 147 F.3d at 797. Therefore, reliance on an afford of section 530 to support a contention that the IRS has determined that an employer's workers are independent contractors must fail. *See Jug's Catering, Inc. v. Indiana Dep't of Workforce Dev., Unemployment Ins. Bd.*, 714 N.E.2d 207, 209 (Ind. Ct. App. 1999). Moreover, section 530 provides a safe harbor only for federal employment tax purposes. It does not affect other consequences of the reclassification of workers under the common law standard. Rev. Proc. 85-18, 1985-1 C.B. 518 (1985).

We find it interesting that the entire course of proceedings in the trial court, and the arguments on appeal to this Court, presume that Crew One has obtained, or would be entitled to, section 530 relief by the IRS for the tax periods in question here, namely 1995 through 1999. However, nothing in the record supports this presumption. Crew One's argument that it falls within the federal safe harbor provision is premised on a 1997 letter from the IRS applicable only to the 1993 tax year. Crew One refers us to no evidence in the record which would support a finding that Crew One had obtained section 530 relief for the tax years 1995 through 1999; that the IRS determined Crew One's workers were independent contractors; or that Crew One continues, properly or improperly, to rely on section 530 protection.

Clearly, Crew One was relieved of liability for 1993 federal employment taxes when the IRS afforded it section 530 relief "as it relate[d] to the reclassification of its workers" pursuant to an audit of Crew One's 1993 filings. As noted, prior to 1996, the IRS position was that a determination that the taxpayer's workers were employees was necessary for section 530 to apply. We observe that the IRS granted Crew One section 530 relief by letter of March 1997, but pursuant to an audit of Crew One for the 1993 tax year. Crew One cites us to nothing in the record which would indicate whether the IRS reclassified Crew One's workers as employees and granted section 530 relief for 1993, or merely determined Crew One was protected under section 530 without making such a determination. The 1997 letter from IRS to Crew One, however, refers to the "reclassification of its workers." If the IRS in fact reclassified Crew One's workers as employees rather than independent contractors, unless Crew One successfully appealed such reclassification, Crew One would no longer have a reasonable basis to treat its workers as independent contractors.

The question of whether the IRS did or would afford Crew One section 530 protection for tax years 1995 through 1999 for federal employment tax purposes has not been raised by the State. Moreover, whether Crew One would qualify for section 530 protection from liability for federal

taxes for these tax periods is not within the jurisdiction of this Court. The question raised by the parties, at the trial level and in this Court, is whether, assuming Crew One currently is within the gambit of section 530 protection, Tennessee must provide parallel relief from state employment taxes. We read the State's argument as conceding, or at least not disputing, that Crew One would be protected by section 530 at the federal level for tax years 1995 through 1999, and accordingly address the state law question decided by the claims commission and raised in this appeal.

### *Tennessee Unemployment Security Law*

The state law issue raised and argued by the parties in this Court, as we perceive it, has two distinct elements. First, according to the language of Tennessee Code Annotated § 50-7-102 and § 104(b), is Tennessee required to provide a safe harbor provision parallel to the federal safe harbor provision provided by section 530? Second, if Tennessee must provide a safe harbor provision parallel to section 530, is it bound by an IRS determination affording the taxpayer federal section 530 relief?

Before trial, Crew One made two stipulations. First, Crew One stipulated "that all stagehand workers at issue in this case may or may not be determined to be employees subject to unemployment insurance coverage under the usual common law test and[,] therefore, withdraws any request in its [c]omplaint for a determination that its stagehands are independent contractors under common law." Second, Crew One stipulated that its complaint was "now limited to only two (2) issues, specifically: (1) whether §530 of the 1978 Revenue Act applies in this case; (2) if § 530 of the 1978 Revenue Act applies in this case, are the Tennessee operations of Crew One Productions, Inc. within the purview of it?"

The Tennessee Claims Commission determined that section 530 would bind the state, and that Crew One was not liable for Tennessee employment taxes for 1995 through 1999. The commissioner held that Tennessee Code Annotated § 50-7-104(b) "says that a federal Internal Revenue Service 530 determination is binding on the state of Tennessee . . . ." The commissioner further interpreted the Code as indicating "[w]e're going to make the law so that the Feds do what we do and we do what the Feds do. Their law applies to us. Our law applies to them." The commissioner did not, however, engage in an analysis of whether, assuming the Tennessee Code implicitly provided a safe harbor provision identical to section 530, Crew One would be entitled to such relief for tax years 1995 through 1999. Further, assuming an IRS determination affording section 530 relief would obligate the State to provide like relief, the commissioner did not engage in an analysis of whether the IRS had afforded Crew One section 530 relief for tax years 1995 through 1999. The commissioner's judgment assumes that since Crew One had obtained section 530 relief for the tax year 1993, it would be within the purview of section 530 for tax years 1995 through 1999, and that the State was bound to provide the same relief.

In its brief to this Court, the State submits "[a]fter finding that § 530 did not bind the State, it (the DLWD) held that Crew One was not entitled to relief from state employment taxes based upon its § 530 relief from federal employment taxes." Moreover, the issue as phrased by the State is

whether the State must afford relief commensurate to section 530 where the taxpayer had been granted section 530 relief by the IRS. Thus the State appears not to argue that Crew One has not obtained section 530 relief for 1995 through 1999. The State submits only that the State is not bound to provide parallel relief.

Crew One, however, argues two points to this Court. First, that the language of Tennessee's Employment Security Law, as codified at Tennessee Code Annotated §§ 50-7-101 through 714, stating that the chapter be read "in pari materia" with federal law, requires Tennessee to provide a safe harbor provision parallel to section 530. Second, Crew One asserts that this Court is being asked to engage in a "federal analysis to determine if an alternate basis exists upon which relief []} may or may not [] be available" to Crew One. Crew One contends "[t]his Court doing such an analysis must certainly find that the taxpayer, Crew One Productions, Inc., complies with [s]ection 530 and that does, under federal law, provide an alternate basis of relief." Crew One cites *Beare Co. v. Tennessee*, 814 S.W.2d 715 (Tenn. 1991), as standing for the proposition that "[t]his can be the only thing that the Supreme Court of Tennessee meant and intended in 1991 in construing Tenn. Code Ann. 50-7-404."

We first address the Tennessee Supreme Court's holding in *Beare*. As an initial matter, we disagree with Crew One that the *Beare* court's analysis of Tennessee Code Ann. § 50-7-404 is in any way determinative in this case. We further disagree with Crew One's assertion that the *Beare* court adopted the position that relief under section 530 provides alternate relief from Tennessee employment taxes.

As in the present case, the Tennessee Claims Commission in *Beare* determined that the taxpayer's workers must be treated as independent contractors for Tennessee employment tax purposes because they were so treated for federal purposes. *Beare Co.*, 814 S.W.2d at 717. The issue addressed by the Tennessee Supreme Court on appeal, however, was not whether section 530 provided alternate relief, but whether Beare's workers were properly classified as independent contractors or employees. *Id.* The court held Beare's workers were independent contractors under the common law rules of Tennessee Code Annotated § 50-7-207(b)(2)(B). *Id.* at 720. Accordingly, the *Beare* court did not engage in an analysis of whether federal law would provide an alternate basis for relief. *Id.* Moreover, we note that the *Beare* court undertook an independent analysis of whether Beare's workers were properly classified as independent contractors under the Tennessee code. It did not hold that a federal determination of the status of Beare's workers would be binding in Tennessee, or that Tennessee must provide a safe harbor provision parallel to section 530.

The state cites *Jug's Catering, Inc. v. Indiana Dep't of Workforce Dev.*, 714 N.E.2d 207 (Ind. Crt. App.)(transfer denied), and *Professional Samplers, Inc. v. South Carolina Employment Sec. Comm'n*, 513 S.E.2d 374 (S.C. Ct. App. 1999), as persuasive authority that Tennessee is not bound by a section 530. We note, however, that the Indiana statutes examined by the court in *Jug's Catering* specified that the Indiana Code conferred "all the rights and benefits which are conferred under the provisions of 42 U.S.C. 501 through 504, 42 U.S.C. 1101 through 1109, 26 U.S.C. 3301 through 3311, and 29 U.S.C. 49 et seq., and the amendments thereto." *Jug's Catering*, 714 N.E.2d

at 210.  Section 530 simply is not within any of the provisions specified by the Indiana Code.  *Id.* at 211.  In *Professional Samplers,* moreover, the question addressed by the court was whether South Carolina's employment tax statute was preempted by federal law.  *Professional Samplers,* 513 S.E.2d at 376.  The *Professional Sampler's* court determined the federal unemployment law does not prevent a state from providing broader unemployment insurance coverage.  *Id.* at 378.  The court further noted that the FUTA does not require states to conform their unemployment coverage to federal law.  *Id.* (quoting *Salem Coll. & Acad., Inc., v. Employment Div.*, 695 P.2d 25, 29 (Or. 1985)(en banc)).  Neither *Jug's Catering* nor *Professional Sampler's*, however, addressed state statutory provisions as broad as the "in pari materia" language contained in Tennessee's Employment Security Law.

We turn, therefore, to whether the "in pari materia" language of Tennessee Code Annotated §§ 50-7-102(b) and 104(b) indicate legislative intent to include a safe harbor provision parallel to section 530.  This Court's primary objective when construing a statute is to effectuate the purpose of the legislature.  *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning.  *Id.* Likewise, the Court must seek to ascertain the intended scope of the statute, neither extending nor restricting the scope intended by the legislature.  *State v. Morrow*, 75 S.W.3d 919, 921 (Tenn. 2002). The Court's interpretation must not render any part of the statute "inoperative, superfluous, void or insignificant."  *Id.* (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn.1975)).  Rather, the Court construes statutory provisions within the context of the entire statute, giving effect to the statute's over-arching purpose.  *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 151 (Tenn. Ct. App. 2001).  Courts must construe a statute reasonably, bearing in mind its objective, the harm it seeks to avoid, and the purposes it seeks to promote.  *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 345 (Tenn. Ct. App.1997).

Section 50-7-102 declares the legislature's intent in enacting the employment security law. The section provides:

(a)  As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is, therefore, a subject of general interest and concern which requires action by the general assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and such worker's family. The achievement of social security requires protection against this greatest hazard to our economic life. This can be provided by encouraging employers to provide more stable employment and, by the systematic accumulation of funds during periods of employment, to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The general assembly, therefore, declares that in its considered judgment the public good and general welfare of the citizens of this

state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

(b)  This chapter is to be construed in pari materia with the provisions of Internal Revenue Code, § 3303(a)(1), as amended, and is to be construed in accordance with the construction placed on the Internal Revenue Code section to the extent such construction is relevant thereto, it being the intent of the general assembly that the provisions of this chapter were adopted with the intent to conform with the provisions of the Internal Revenue Code, and further that it was the intent of the general assembly to enact the remaining portions of this statute which are in conformity with the provisions of the Internal Revenue Code, if some portions of this chapter should be declared not to meet the requirements.

Tenn. Code Ann. § 50-7-102(1999).

Section 50-7-104 declares the legislature's intent to conform to federal law.  The section provides:

(a) If the tax imposed by §§ 3301-3308 of the Internal Revenue Code of 1954, or any amendments thereto, or any other federal tax against which premiums under this chapter may be credited, has been amended or repealed by congress, or has been held unconstitutional by the supreme court of the United States, with the result that premiums hereunder, or a major portion thereof, may no longer be credited against such federal tax, then no further premiums hereunder shall be made.

(b)  This chapter is to be construed in pari materia with the provisions of the federal Unemployment Tax Act, the federal Social Security Act and any other related federal law as it or they have been or may be amended and is to be construed in accordance with the construction placed on such acts to the extent such construction is relevant thereto, it being the intent of the general assembly that the provisions of this chapter were adopted with the intent to conform with the provisions of such federal laws, and, therefore, any section, paragraph, clause or portion of this chapter that shall be declared by lawful authority not to conform to such laws or law shall be void and of no effect, and, further, that it is the intent of the general assembly to enact the remaining portions of this chapter which are in conformity with the relevant provisions of such federal law or laws if some portions of this chapter should be declared not to conform with the federal requirements.

(c)  If any federal law or laws or any portions of such law or laws or amendments thereof effectively requiring state unemployment compensation laws to cover services performed in the employ of governmental employers referred to in § 50-7-207(b)(3) should be repealed by congress or held unconstitutional by any action

of the supreme court of the United States, no further premiums or payments in lieu of premiums shall be made by such employers, and such services will no longer be considered covered by this chapter.

Tenn. Code Ann. § 50-7-104 (1999).

We disagree with Crew One's assertion that construing Tennessee's Employment Security Law "in pari materia" with federal law mandates a holding that Tennessee must include a safe harbor provision parallel to section 530. First, Tennessee Code Annotated § 50-7-102(b) specifies that the chapter is to be construed in pari materia with I.R.C. § 3303(a)(1), and that the Tennessee chapter was adopted with the intent to conform to the Internal Revenue Code. As noted, section 530 is neither part of the FUTA nor a codified section of the Internal Revenue Code. Thus, Crew One's argument based on Tennessee Code Annotated § 50-7-102(b) must fail.

Second, Tennessee Code Annotated § 50-7-104(b) clearly mandates that the provisions in chapter 50 must conform to the federal law "to the extent such construction is relevant thereto." Thus, sections which are included in the chapter must not conflict with federal law. We do not agree with Crew One, however, that reading the chapter "in pari materia" with the federal provisions requires Tennessee to grant a provision parallel to section 530, or to engage in an analysis to determine whether a taxpayer would be entitled to relief under section 530. Assuming, *arguendo*, that a note to a codified section of the Federal Code should be construed as a "provision of federal law," we agree with the State that Tennessee's employment security law need not incorporate every aspect of the federal provisions to be in conformity with the federal acts.

Generally, if two acts are construed "in pari materia" and one act includes provisions omitted from the other, the omitted provisions will be applied to both acts unless that provision is inconsistent with the purposes of the act. *Gates v. Long*, 113 S.W.2d 388, 392 (Tenn. 1938). In Tennessee, it is primarily the legislature that determines public policy. *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn.1998). Where the legislature has enacted a statute that addresses the subject in question, then the public policy reflected therein prevails. *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn.1978).

The purpose of Tennessee's Employment Security Law is to guard against "economic insecurity due to unemployment (which) is a serious menace to the health, morals and welfare of the people of this state." Tenn. Code Ann. § 50-7-102(a)(1999). Thus, the statute is designed to protect workers who are involuntarily unemployed. *Simmons v. Traughber*, *Comm'r of the Tenn. Dep't of Employment Sec.*, 791 S.W.2d 21, 24 (Tenn. 1990). Enacted by the legislature pursuant to the police powers of the state, the Employment Security Law declares that the public welfare requires encouraging employers to provide stable employment and that unemployment reserves be set aside for the benefit of those who become involuntarily unemployed through no fault of their own. Tenn. Code Ann. § 50-7-102(a)(1999). The courts in Tennessee, therefore, construe unemployment compensation statutes liberally in favor of the employee. *Weaver v. Wallace*, 565 S.W.2d 867, 869 (Tenn. 1978).

The purpose of the United States Congress in developing section 530, however, was to "alleviate what was perceived as overly zealous pursuit and assessment of taxes and penalties against employers who had, in good faith, misclassified their employees as independent contractors." *Ahmed v. United States*, 147 F.3d 791, 796 (8th Cir. 1998)(quoting *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 239 (8th Cir. 1996)). In such cases, the employer became liable for employment tax liabilities which he had failed to withhold and pay even where the worker (now reclassified as an employee) had paid self-employment and income taxes. Staff of Joint Committee on Taxation, *Present Law and Issues Relating to Classification of Workers as Employees or Independent Contractors,* 23-96 (Jnt. Comm. Print 1996). Section 530 was designed as a temporary measure to give Congress an opportunity to resolve complicated worker classification issues. *Id.* Originally scheduled to expire at the end of 1979, section 530 was temporarily extended twice[2] and permanently extended by the Tax and Equity Fiscal Responsibility Act of 1982.[3] *Id.* Thus section 530 was a remedial measure designed to address problems particular to IRS enforcement of federal law.

Section 530 relief is not available in all cases, moreover. *Id.* Section 530(d) provides: "this section shall not apply in the case of an individual who, pursuant to an arrangement between the taxpayer and another person, provides services for such other person as an engineer, designer, drafter, computer programmer, systems analyst, or other similarly skilled worker engaged in a similar line of work.." 26 U.S.C. § 3401 note. The common-law test is used to determine whether such individuals are employees or independent contractors. Staff of Joint Committee on Taxation, *Present Law and Issues Relating to Classification of Workers as Employees or Independent Contractors,* 23-96 (Jnt. Comm. Print 1996). Section 530 is not part of a federal act, but a note thereto. It is not an exemption or exception, but a relief provision afforded particular instances.

We agree with Crew One that the Tennessee legislature clearly intended that Tennessee law conform to relevant portions of the federal employment tax provisions. Further, the legislature provided that any portion of the Tennessee provisions which did not conform to the federal law shall be void and of no effect. Tenn. Code Ann. § 50-7-104(b)(1999). However, the legislature did not mandate that Tennessee provide every relief available at the federal level. It is difficult to imagine, moreover, how the State could apply every temporary provision enacted by Congress to address problems particular to federal enforcement, particularly where such provisions are not federal acts or amendments thereto, but notes following a federal code section.

The policy behind Tennessee's Employment Security Law is to protect workers in Tennessee from involuntary unemployment. The statute contains no safe harbor provision parallel to section 530, and this federal provision does not further Tennessee public policy as defined by the Tennessee legislature. Tennessee, therefore, is not bound to provide liability protection parallel to section 530 for state employment tax purposes. Accordingly, Tennessee is not bound by a federal section 530 determination.

---

[2] See Pub.L. 96-167; P.L. 96-541.

[3] Pub.L. 97-248.

We hold Tennessee Code Annotated §§ 50-6-102 and 104 do not mandate a safe harbor provision parallel to section 530. Thus, Tennessee is not required to relieve an employer from state employment tax liability when the employer has obtained section 530 relief from federal employment tax liability. We accordingly reverse the judgment of the Tennessee Claims Commission.

### *Classification of Crew One's Workers*

The State asserts that Crew One has stipulated, for the purposes of this lawsuit, that its workers are to be considered employees. The State further submits that Crew One does not dispute the determination by DLWD that Crew One's workers are employees and not independent contractors. Crew One contends it made no such stipulation.

Crew One made two stipulations. First, that its stagehand workers "may or may not be determined to be employees . . . under the usual common law test." It, therefore, "[withdrew] any request in its [c]omplaint for a determination that its stagehands are independent contractors under common law." Second, Crew One stipulated that its complaint accordingly was limited whether section 530 applied in this case and whether, if so, Crew One was within its purview.

We agree with Crew One that it did not stipulate that its stagehand workers are employees under the common law test. However, Crew One withdrew its claim in the Claims Commission requesting a determination that its workers are independent contractors. It did not withdraw its claim for a redetermination of its employment tax liability, but relied on protection under section 530.

Although we disagree with the State that Crew One stipulated that its workers are employees, Crew One withdrew the classification issue from this lawsuit. Thus, the determination of the DLWD that Crew One's Tennessee workers are employees and not independent contractors is no longer challenged by Crew One. Crew One accordingly is liable for Tennessee employment taxes as assessed by the DLWD.

### *Conclusion*

In light of the foregoing, the judgment of the Tennessee Claims Commission is reversed. The determination of the DLWD accordingly is reinstated. Costs of this appeal are taxed to the Appellee, Crew One Productions, Inc.

 

_____
DAVID R. FARMER, JUDGE