IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 22, 2016 Session

## DANNY HALE v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20141330      William O. Shults, Commissioner**

_____

### No. E2016-00249-COA-R3-CV

_____

This appeal involves a suit filed in the Tennessee Claims Commission against the State of Tennessee for the wrongful death of Tammy Hale. The claimant, Ms. Hale's father, titled his cause of action as one for "negligent care, custody, and control of persons" pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E). The claimant alleged that the State was responsible for the actions of an inmate whose release was not conditioned upon participation in community supervision for life as required by section 39-13-524. The State sought dismissal, alleging that the claim was really one for "negligent deprivation of statutory rights" based upon the failure to adhere to section 39-13-524, which does not confer a private right of action. Following a hearing, the Claims Commission, William O. Shults, Commissioner, agreed and dismissed the claim. The claimant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims**
**Commission Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellant, Danny Hale.

Herbert H. Slatery, III, Attorney General and Reporter; Andree S. Blumstein, Solicitor General; and Eric A. Fuller, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

# OPINION

## I.    BACKGROUND

Terry Releford, who was convicted of conspiracy to commit first degree murder, aggravated assault, three counts of aggravated rape, and two counts of aggravated kidnapping, was sentenced to confinement in the Tennessee Department of Correction ("the TDOC").    Tennessee Code Annotated section 39-13-524 requires that those convicted of certain offenses, including aggravated rape, remain subject to community supervision for life in order "to protect the public from the person's committing a new sex offense, as well as [to promote] the rehabilitation of the person."  The requirement of community supervision for life must be included on the judgment of conviction pursuant to Section 39-13-524.[1]  The requirement was not included on Mr. Releford's judgment of conviction for aggravated rape.

Upon noticing that Mr. Releford's judgment of conviction did not contain the proper notation, the TDOC specifically requested a corrected judgment from the Bradley County District Attorney's Office by letter, dated September 23, 2005.  A corrected judgment was never entered, and Mr. Releford was released without the requirement of further supervision on May 21, 2012.

Following his release, Mr. Releford met Tammy Hale, a mother of two young girls.  They married on August 20, 2012.  On May 19, 2013, Mr. Releford murdered Ms. Hale, who was nine months pregnant with his child, and raped one of her daughters.

Ms. Hale's father, Danny Hale ("Claimant"), filed a notice of claim with the Division of Claims Administration against the State, namely the judicial and prosecutorial officials involved in the case, alleging a cause of action for negligent care, custody, and control of persons pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E).  He claimed that the officials had committed negligence by failing to correct the judgment to reflect the requirement of community supervision for life pursuant to section 39-13-524.

The claim was transferred to the Tennessee Claims Commission ("the Claims Commission") with William O. Shults serving as the Claims Commissioner.  The State filed a motion to dismiss, arguing that the State officials were entitled to immunity and that the claim was really one for negligent deprivation of statutory rights based upon the failure to adhere to section 39-13-524, which does not confer a private right of action. Claimant sought to amend his complaint to include the TDOC as a party.  Commissioner

---

[1]"(b) The judgment of conviction for all persons to whom subsection (a) applies shall include that the person is sentenced to community supervision for life."

Shults dismissed all claims against the judicial and prosecutorial officials and any allegations presumably based upon the negligent deprivation of statutory rights, finding that section 39-13-524 did not confer a private right of action. However, he permitted a hearing on whether the TDOC could be held liable for the negligent care, custody, and control of persons pursuant to section 9-8-307(a)(1)(E).

The case proceeded to a hearing, at which several witnesses testified. Torye Lee, a TDOC employee, testified that she was promoted to a management position in the sentence computation services unit approximately 12 years ago. She stated that the TDOC is responsible for documenting an offender's sentence and calculating release eligibility dates and sentence expiration dates. She provided that her unit is specifically responsible for ensuring that all orders of conviction received from the court are inputted into the TDOC system within ten business days. She stated that the analysts in her unit cannot change an illegal sentence unless they receive a corrected order from the court. She explained that the analysts contact the jail, the court, or the district attorney's office by telephone, email, fax, or letter to ensure that the information they have is correct or to request a corrected order when needed. She stated that there is not a procedure in place when a timely response to her unit's inquiries is not received.

Ms. Lee provided that her unit is also responsible for indicating whether an offender is subject to community supervision for life upon his or her release. She identified a copy of a letter she sent to the Bradley County District Attorney General's Office regarding Mr. Releford's aggravated rape convictions. The letter, dated September 23, 2005, provided as follows:

> This letter is in reference to Terry Releford being sentenced in Bradley County, Tennessee on March 3, 1998.
>
> He was convicted of Aggravated Rape in the above listed case and received a total sentence of seventeen years. This order does not indicate that he is to receive community supervision for life per [Tennessee Code Annotated section] 39-13-524.
>
> Please clarify the court's intent by having an amended or corrected order forwarded advising that this conviction carries lifetime supervision. At this time, our record is not flagged to indicate Mr. Releford should be supervised for life.

She acknowledged that the letter was sent approximately seven years following Mr. Releford's conviction. She provided that her records indicated that a similar letter had been sent to the judge on January 7, 2004. She explained that judges do not usually

- 3 -

answer such correspondence and that she began mailing the letters to the district attorney's office and even resent letters to the appropriate office that had been mailed to the judge's chambers.

Ms. Lee stated that she did not receive a response from the district attorney's office concerning Mr. Releford. She did not inquire further to obtain a corrected order before his release and was unsure as to whether anyone in her office attempted to obtain a corrected order. She explained that she did not inquire further because a procedure had not been put in place to require further inquiries under such circumstances.

Ms. Lee identified two additional letters, both dated September 3, 1998, in which a former manager of her unit contacted General Estes to inform him that two of Mr. Releford's judgments of conviction had been rejected as illegal or incomplete. The manager highlighted the errors and requested amended orders. Ms. Lee then identified several amended orders that corrected the errors pursuant to the unit manager's request. She acknowledged that the 1998 letters did not reference the community supervision for life provision. She explained that the law requiring community supervision for life was adopted in 1996 and that the computer system had not been updated to recognize the absence of the provision as an illegality.

Derrick Schofield, the TDOC Commissioner, testified by deposition that he is responsible for managing the prison system and ensuring the adequate supervision of those on probation or parole. He explained that on July 1, 2012, the legislature transferred the supervisory services of the Board of Probation and Parole to the TDOC, thereby dismantling the Board of Probation and Parole and creating the Board of Parole. He stated that the Board of Parole is now responsible for making parole decisions, while the TDOC is responsible for supervising those on probation or parole.

Commissioner Schofield testified that the TDOC is also generally responsible for notifying the District Attorney General's Office when an inmate's judgment of conviction does not include community supervision for life as required by the statute. He agreed that Mr. Releford's judgment of conviction for three counts of aggravated rape should have included the requirement of community supervision for life. He confirmed that the TDOC attempted to obtain a corrected judgment by sending two letters but that his department did not inquire further when no response was received. He identified an email, dated three months before Mr. Releford's release, in which an employee[2] noted that Mr. Relford's release was not conditioned upon community supervision for life as required. He provided that the TDOC did not have a policy or procedure in place at the

---

[2] Commissioner Schofield could not independently confirm that the individual who wrote the email was a TDOC employee or a Board of Probation and Parole employee. He agreed that the TDOC and the Board of Probation and Parole are State agencies.

time to address the release of an inmate whose judgment of conviction had not been corrected at the time of release to require community supervision pursuant to statute.

Commissioner Schofield testified that Mr. Releford accumulated 13 disciplinary infractions while incarcerated and refused to participate in any mental health or sex offender treatment programs. He stated that the former Board of Probation and Parole would have been responsible for supervision at the time of Mr. Releford's release in May 2012. He agreed that the Board of Probation and Parole was not authorized to require treatment upon release because a corrected judgment was never obtained. He was unsure as to what Mr. Releford would have been required to do if a corrected judgment had been obtained. He explained that community supervision is tailored to address each inmate's unique circumstances. However, he agreed that Mr. Releford would have been subject to some type of supervision for the remainder of his life and that failure to comply with said supervision could have resulted in further confinement.

Ms. Hale's mother, Vicki Hale ("Mother") testified at the hearing that Ms. Hale had two children and was 35 years old at the time of her death. She agreed that Ms. Hale had been married several times and had been involved in several other relationships that did not result in marriage. She noted that Ms. Hale was hard-working, had generally maintained employment since the age of 16, and was attending school at the time of her death to obtain her teacher's licensure.

Mother testified that she and Claimant owned the house that Ms. Hale lived in with her daughters. She agreed that she and Ms. Hale disagreed on occasion but asserted that their relationship had improved. She conceded that she knew little about Ms. Hale's relationship with Mr. Releford and that their marriage was a surprise to her. She recalled that Ms. Hale and Mr. Releford "seemed very happy" in their relationship and that he was involved in the children's lives as well. She noted that Ms. Hale was nine months pregnant with Mr. Releford's daughter at the time of the murder. She acknowledged that Ms. Hale knew that Mr. Releford had a criminal record but asserted that Ms. Hale advised her that his conviction was a result of a childhood indiscretion that he confessed to her without provocation. She claimed that she would have "made sure he was gone out of our lives" if she knew the details of his prior offenses.

Kevin Walker testified at the hearing that he first met Ms. Hale in elementary school. He stated that they reconnected when Ms. Hale obtained employment as a delivery driver for a pizza franchise that he managed. He provided that they became friends and that he spent time with her and her daughters on a regular basis. He described her as very cautious with whom she allowed to interact with her children. He noted that she even worked for him at one point after he started a tax preparation business. He

recalled that Ms. Hale eventually quit working for him and ended their friendship in February 2013 because Mr. Releford disapproved of their relationship.

Mr. Walker testified that Ms. Hale contacted him again at some point after she discovered that Mr. Releford had a criminal history. He provided that Ms. Hale was "confused" because she had researched his criminal history but could not find any information to confirm what she had been told by someone else. He noted that her concerns were assuaged by the fact that she could not find any information indicating that probation was required for his alleged offenses. He also researched Mr. Releford's criminal history and could not find any information concerning his criminal record. He conceded that he relied upon a general background check routinely used for his business and did not check the TDOC website. He explained that he also did not know the correct spelling of Mr. Releford's name.

Mr. Walker acknowledged that Ms. Hale had been involved in several prior relationships. He also agreed that she allowed Mr. Releford to move in with her and her daughters the night they met. He recalled that Ms. Hale contacted him two weeks before her death in May 2013 and advised him that she intended to leave Mr. Releford. He described her as "panicked" and "disturbed."

Belinda Duncan, Ms. Hale's aunt, testified at the hearing concerning Ms. Hale's character and love for her family. She claimed that Ms. Hale would not have continued her relationship with Mr. Releford had she known the truth concerning his criminal history. She acknowledged that she did not learn of Ms. Hale's relationship with Mr. Releford until after they married. She provided that she met him three or four times at different functions and was able to observe his interactions with Ms. Hale and her children. She described him as "just a regular guy."

Claimant described Ms. Hale as a hard worker and recalled that she worked for several pizza companies before starting a business with her brother. He provided the initial investment, but she eventually left the business to take care of her daughter. He acknowledged that the business eventually failed when he ran out of money.

Claimant testified that he and Ms. Hale enjoyed a healthy relationship even though he often disagreed with her relationship decisions. He recalled first meeting Mr. Releford at some point in May or June 2012. He agreed that Mr. Releford moved in with Ms. Hale soon after the relationship began but claimed that they "seemed to be getting along" and that he interacted well with the children. He noted that Mr. Releford maintained employment and provided for her and the children. He acknowledged that he also financially supported her when needed even after she began dating Mr. Releford. He admitted that she and Mr. Releford grew marijuana in the house but denied knowledge of

their activities prior to the murder. He also agreed that Ms. Hale suffered from a mental health problem and had been diagnosed as bipolar.

Claimant believed that Ms. Hale "felt safe" with Mr. Releford even after she learned he had a criminal record. He recalled that Mr. Releford advised her and the rest of the family that his conviction was a result of a childhood indiscretion. He did not research Mr. Releford's history further because he believed him based upon the fact that he was not on probation and was not prohibited from interacting with children. He explained that he was unaware that Mr. Releford spent approximately 15 years in prison for aggravated rape and other offenses. He believed that Ms. Hale would have left Mr. Releford and sought shelter with him if she knew the basis for Mr. Releford's prior convictions. He explained that he always welcomed her home when needed and that she had returned home on occasion following other failed relationships.

James Thomas Streeter testified that he and Ms. Hale married in 1997 and divorced in 2002. They had one child together. He described Ms. Hale as a good mother, a good wife, and a good person. He provided that they were able to maintain a friendship following the divorce and that they raised their daughter together, despite their differences. He agreed that Ms. Hale engaged in a number of relationships following their divorce and had even married two men before she met and married Mr. Releford.

Mr. Streeter recalled meeting Mr. Releford at his business and described him as a "nice guy." He stated that his further interactions with him gave him no cause for alarm or concern. He claimed that his daughter never indicated that anything was wrong with Mr. Releford or that they were unhappy as a family unit. He recalled that Ms. Hale also never gave him any indication that she was unhappy in her relationship or expressed any concern regarding Mr. Releford. He provided that Ms. Hale later advised him of Mr. Releford's criminal past as she understood it. He stated that the information did not give him cause for concern because they were already married and functioning as a family unit. He confirmed that Mr. Releford bound and raped his daughter.[3]

Following the hearing, Commissioner Shults dismissed the claim, finding that while couched as a claim for negligent control of persons, the claim was actually one for negligent deprivation of statutory rights for failure to comply with section 39-13-524, which does not confer a private right of action against a governmental entity.[4] In the event of further appellate review, he also held a claim based upon section 9-8-

---

[3] He had not yet filed a case on behalf of his daughter, who was a minor at the time of the hearing.

[4] In order to sustain a claim of negligent deprivation of statutory rights, the claimant must prove "that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions[.]" Tenn. Code Ann. § 9-8-307(a)(1)(N).

307(a)(1)(E) could not proceed because it was not reasonably foreseeable that Mr. Releford would murder Ms. Hale and her unborn child. He explained that Ms. Hale's own failure to either leave the home after learning of an earlier conviction or to adequately research his criminal history "might well have warranted a significant assignment of fault to her." He continued,

> [T]he community supervision requirement found in [section 39-13-524] is directed toward preventing convicted sex offenders from "committing a new sex offense". Tragically, what was involved are dual murders and not sex offenses. Although [Mr. Releford's] earlier convictions [included] charges involving violence, the statute on which [Claimant] bases his claim is directed at preventing the recurrence of sexually based offenses by those convicted previously of that sort of crime.

This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether this appeal should be dismissed because Claimant failed to appeal the basis for the dismissal of the claim.

B.    Whether the Claims Commission properly dismissed the claim.

## III.    STANDARD OF REVIEW

The Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may direct." Tenn. Const. art. 1, § 17. "This constitutional provision reflects sovereign immunity, the notion that a sovereign governmental entity cannot be sued in its own courts without its consent." *Northland Ins. Co. v. State*, 33 S .W.3d 727, 729 (Tenn. 2000) (citations omitted); *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000). "The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it." *Jones v. L & N Railroad Co.*, 617 S.W.2d 164, 170 (Tenn. Ct. App. 1981).

The legislature has waived its sovereign immunity as to certain actions brought before the Claims Commission. *See* Tenn. Code Ann. § 9-8-301, et seq. The relevant code section provides that "[t]he commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the [S]tate based on the acts or omissions of '[S]tate employees'" that fit within one of several categories.

- 8 -

Tenn. Code Ann. § 9-8-307(a)(1). Outside of these categories, no jurisdiction exists for claims against the State.

Our review of decisions of individual claims commissioners and those of the Claims Commission are governed by the Tennessee Rules of Appellate Procedure. Tenn. Code Ann. § 9-8-403(a)(1). Decisions by the Claims Commission are reviewed pursuant to the standard of review for non-jury cases. Tenn. R. App. P. 13(d). The factual findings of the Claims Commission are reviewed de novo with a presumption of correctness. The presumption must be honored unless this court finds that the evidence preponderates against those findings. *Beare Co. v. State*, 814 S.W.2d 715, 717 (Tenn. 1991). Questions of law are reviewed de novo, without a presumption of correctness. *Crew One Prods, Inc. v. State*, 149 S.W.3d 89, 92 (Tenn. Ct. App. 2004).

## IV.    DISCUSSION

### A.

The State argues that dismissal of the appeal is warranted because Claimant does not issue an argument challenging the basis of the Claims Commission's ruling, namely that the claim is really one for negligent deprivation of statutory rights and that Claimant cannot recover because section 39-13-524 does not confer a private right of action.

In order to sustain a claim of negligent deprivation of statutory rights, the claimant must prove "that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions[.]" Tenn. Code Ann. § 9-8-307(a)(1)(N). Claimant alleged that the TDOC, a State agency, was negligent by failing to ensure that Mr. Releford was subject to community supervision for life upon release pursuant to section 39-13-524. Following the hearing, the Commissioner found that the claim of negligent control of persons must be considered as one for negligent deprivation of statutory rights because the allegations raised were entirely dependent upon the failure to adhere to section 39-13-524, which does not confer a private right of action. Claimant generally appeals the denial of relief. Accordingly, we conclude that a valid issue has been presented for our review on appeal.

### B.

Claimant first argues that the Commissioner erred in finding that the Bradley County officials were entitled to absolute immunity. He asserts that the officials were only entitled to qualified prosecutorial immunity, which does not apply here because they were not performing a discretionary function or instituting or prosecuting a judicial

proceeding. The State responds that Claimant abandoned this claim by filing an amended complaint that specifically disavowed any continued allegations against the officials.

The Commissioner granted the motion to dismiss on this issue on March 9, 2015. The record confirms the State's position on this issue, namely that Claimant did not reassert this claim in the amended complaint and specifically disavowed any continued allegations against the officials. Accordingly, we conclude that this issue was waived by the filing of the amended complaint.

Claimant next argues that the Commissioner erred in denying relief pursuant to section 9-8-307(a)(1)(E). He asserts that the TDOC assumed a duty to obtain a corrected judgment and that the TDOC breached that duty by failing to ensure that a corrected judgment was obtained. He further asserts that Mr. Releford's actions were foreseeable and that the failure to control him was a substantial factor in the death of Ms. Hale. He believes that her death and her daughter's rape[5] were preventable and could have been avoided had Mr. Releford been subject to supervision as required. The State responds that dismissal was warranted because the allegations of negligence stem entirely from the failure to comply with section 39-13-524, which does not confer a private right of action.

We are extremely sympathetic with Claimant and his family; however, we must agree with the Commissioner that the claim at issue is not one for negligent control of persons. The claim itself is clearly predicated upon the TDOC's alleged failure to ensure compliance with section 39-13-524. Much of the testimony presented at the hearing concerned the failure to comply with the statute and whether compliance with said statute would have prevented the death of Ms. Hale. Claimant made no other allegations that the TDOC was otherwise negligent in the care, custody, and control of Mr. Releford. In such cases, the gravamen of the claim must be recognized as one for negligent deprivation of statutory rights. *See Mosely v. State*, 475 S.W.3d 767, 772-73 (Tenn. Ct. App. 2015) (affirming the dismissal of a claim for negligent control of persons when the allegations were clearly predicated upon the State's failure to ensure compliance with a statutory provision that did not confer a private right of action). Section 39-13-524 does not confer a private right of action. Claimant does not assert otherwise. Accordingly, we affirm the dismissal of the complaint for lack of subject matter jurisdiction.

---

[5] We must note that the claim at issue concerned the wrongful death of Ms. Hale, not the rape of her daughter, who was still a minor at the time of the hearing.

## V.    CONCLUSION

The decision of the Claims Commission is affirmed.  The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Danny Hale.

_____
JOHN W. McCLARTY, JUDGE