IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2010 Session

IN RE DRAKE L.

Appeal from the Juvenile Court for Dickson County
No. 08-03-096-M      A. Andrew Jackson, Judge

No. M2008-02757-COA-R3-JV - Filed July 13, 2010

Mother appeals the trial court's change of custody of the parties' minor child to Father.
Father appeals the trial court's determination of Mother's child support obligation and its
failure to award him a judgment for child support retroactive to the date he was awarded
temporary custody. Both parties contest the trial court's findings of contempt. We affirm
the trial court's change of custody to Father. We reverse its finding of contempt as to Mother
and the denial of retroactive child support for Father. We remand the matter to the court for
a determination of Mother's child support obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in
Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL,
P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Timothy T. Ishii, Nashville, Tennessee, for the appellant, Cassandra A.

Abby Rose Rubenfeld, Nashville, Tennessee, for the appellee, Brian L.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Drake L., born in 2001, is the son of Bryan L. ("Father") and Cassandra A.
("Mother"). Mother was designated the primary residential parent in an agreed parenting
plan between the parties in 2004, and Father received standard visitation with the child,
including weekends and some holidays. Father's child support obligation was set at $85.00
per week.

On November 10, 2004, Mother filed a petition for contempt accusing Father of failing to abide by previous court orders to pay child support. Mother asserted that Father's child support arrearage was approximately $340.00. Mother also petitioned the court for an increase in child support. The juvenile court dismissed Mother's petition on June 28, 2005 when Mother did not attend the hearing and granted Father's motion to dismiss for failure to prosecute.

Father filed a petition to modify the parenting plan and for contempt on December 31, 2007, alleging a substantial and material change in circumstances that necessitated his being declared the primary residential parent of Drake L. Father alleged the following with regard to a change in circumstances: Mother's home was lost to foreclosure; Mother's driver's license was restricted due to a prior DUI, but Mother continued to drive; Drake L. was doing poorly in school; Mother moved to Colorado with Drake L. without giving Father advance notice; Mother consistently threatened to disallow Father his court-ordered visitation; Mother allowed Drake L. around her brother, whom Father suspected used illegal drugs. Father further claimed that Mother's failure to pay for half of Drake L.'s medical bills constituted contempt of the court's prior order. Because Father feared that once Mother was served with the petition she would refuse to allow him to see Drake L., who was with Father when the petition was filed, Father also moved the court to enter a temporary restraining order against Mother. The court issued a temporary restraining order against Mother on December 31, 2007, preventing her from interfering with Father's custody of Drake L.

Mother filed her answer to Father's petition and a counter-petition for contempt and modification of child support on January 9, 2008. In her counter-petition, Mother accused Father of criminal contempt for failing to pay his court-ordered child support on four separate occasions in December 2007 and January 2008; she alleged Father owed a total of $340.00. Additionally, Mother asserted that there had been a change in the parties' respective incomes that would result in a 15% increase in the amount of child support previously ordered, thus warranting a modification of support.[1]

On January 11, 2008, Father filed a motion to terminate his child support obligation retroactive to the date that the court entered the temporary restraining order against Mother, December 31, 2007.

---

[1] Pursuant to Tenn. Comp. R. & Regs. § 1240-2-4-.05(2)(a), a significant variance is required for the modification of a child support order. Under Tenn. Comp. R. & Regs. § 1240-2-4-.05(2)(c), a significant variance exists when there is at least a 15% change between the amount of the current support order and the amount of the proposed presumptive support order.

A hearing was held on January 17, 2008. In the court's order, dated February 1, 2008, Father was designated the primary residential parent, and Mother was granted parenting time. The court prohibited both parties from having any overnight guests of the opposite sex during their residential time with Drake L. The temporary restraining order previously signed was made into a temporary injunction forbidding both parties from removing Drake L. outside specified boundaries overnight. Additionally, Father's child support obligation was temporarily suspended retroactive to the date the temporary restraining order was signed. The matter was set for a final hearing on February 15, 2008.

Father filed a motion for contempt against Mother on February 8, 2008, claiming that Mother had an overnight guest of the opposite sex in her home during her residential time with Drake L., violating the court's previous order.

The final hearing was reset for May 5, 2008. The court ruled from the bench that there had been a material change in circumstances such that a change in the residential parent from Mother to Father was in the best interest of Drake L., that Father was in contempt for failure to pay three weeks of child support, that Mother was in contempt for having an overnight guest of the opposite sex, that Father's child support payments should be set off against Mother's unpaid medical payments, and that Father would not be awarded a judgment for child support retroactive to the date Drake L. had come to live with him.

Father filed a motion on May 21, 2008, asking the court to set forth the specific findings of fact that led it to find a material change in circumstances at the May 5, 2008 hearing.

On November 4, 2008, the trial court issued an order finding a substantial and material change in circumstances and declaring Father the primary residential parent of Drake L.[2] The court ordered that Father's child support arrearage of $170.00 was to be offset by Mother's unpaid medical bills in the amount of $3,546.52. Both Mother and Father were found to be in contempt of court and ordered to pay $50.00 fines.[3] Mother's child support was set at $225.00 per month.

On November 24, 2008, Father moved the court to enter an order requiring Mother to pay her child support payments and unpaid medical expense payments by a certain date

---

[2] Although the November 4, 2008 order is titled "Amended Order," the record does not contain any prior order from the May 5, 2008 hearing.

[3] When the court issued its ruling from the bench at the May 5, 2008 final hearing, it stated that the punishment for the parties' contempt would be a $250 fine and costs payable to the court.

each month, as well as to provide transportation for Drake L. during her parenting time. The court granted Father's motion on December 17, 2008.

Mother filed this appeal on November 26, 2008, before there had been a hearing on Father's pending motion for specific findings of fact or his motion regarding Mother's payment of child support and medical expenses. On May 14, 2009, this court remanded this matter to the trial court for the limited purpose of ruling on the motion for specific findings of fact.

The juvenile court issued its findings of fact on October 6, 2009. The court made the following findings: (1) Mother moved to Colorado with Drake L. without providing Father proper statutory notice; (2) Mother admitted to having her boyfriend as an overnight guest in her home while exercising her residential parenting time with Drake L. in violation of the juvenile court's order of February 1, 2008; (3) Mother admitted to smoking in the home with Drake L. present, even though he has been diagnosed with respiratory problems; (4) Father was in arrears in child support for three weeks; (5) Mother owed one-half of $2,260.00; (6) both Mother and Father were in contempt and fined $250.00; (7) it was in Drake L.'s best interest that Father be made the primary residential parent.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). When the trial court makes no specific findings of fact, we must review the record to determine where the preponderance of the evidence lies. *Kendrick*, 90 S.W.3d at 570. We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Issues of statutory construction present questions of law. *Lipscomb v. Doe*, 32 S.W.3d 840, 843-44 (Tenn. 2000); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999).

ANALYSIS

On appeal, Mother asserts that the trial court's findings of fact were insufficient to effectuate a change of custody.[4] Father challenges the trial court's determination of Mother's

---

[4] Mother raised three issues in her first appellate brief, which was filed before the trial court issued its findings of fact: (1) whether the trial court erred by ordering a change of custody without finding that it was in Drake L.'s best interest; (2) whether this court should analyze the facts given the absence of any
(continued...)

child support obligation and its denial of child support to Father retroactive to the date that he was first awarded temporary custody. Father also requests attorney fees on appeal. Both parties contest the trial court's ruling finding them in contempt.

Change in Primary Residential Parent

Mother initially argued that the trial court's order was insufficient under Tenn. Code Ann. § 36-6-101(a)(2)(B)(i) because it lacked findings of fact to support the conclusion that a modification of custody was necessary. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i) provides that "[i]n each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination." The court subsequently issued findings of fact. Mother now argues that the trial court made only assertions of fact, against the preponderance of the evidence, and offered no reasons for its conclusion that a change of custody was warranted.

It is well-established that, in order to modify a parenting plan to change the primary residential parent, the trial court must apply a two-part analysis: the court must find that "both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick*, 90 S.W.3d at 575. Tenn. Code Ann. § 36-6-101(a)(2)(B) is the relevant statutory provision as to what constitutes a material change of circumstance in the context of a custody change:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

In making its best interest determination, the court is to consider all relevant factors, including the following set forth in Tenn. Code Ann. § 36-6-106(a): (1) the love, affection,

---

[4](...continued)
findings of fact from the trial court; and (3) whether the trial court erred in holding Mother in contempt. The first two issues were negated by the trial court's subsequent issuance of findings of fact. In her supplemental brief, Mother raises only the issue of whether the trial court's findings of fact were sufficient to effectuate a change of custody. Though not listed as a separate issue, Mother also reiterates her contempt argument in her supplemental brief.

and emotional ties between the parents and the child; (2) the disposition of the parents to provide the child with food, clothing, medical care, education, and other necessary care, as well as the degree to which a parent has been the primary caregiver; (3) the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; (4) the stability of the family unit of the parents; (5) the mental and physical health of the parents; (6) the home, school, and community record of the child; (7) the reasonable preference of the child; (8) evidence of physical or emotional abuse to the child, to the other parent, or to any other person; (9) the character and behavior of any other person who resides in or frequents the home of a parent and the person's interactions with the child; and (10) each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and both parents, consistent with the best interest of the child.

### (A) Material Change in Circumstances

Because Mother challenges the sufficiency of the trial court's findings of facts, which are entitled to a presumption of correctness, it is the duty of this court to review the record to see where the preponderance lies. *Kendrick*, 90 S.W.3d at 570. Mother challenges two of the trial court's findings of fact that bear on its determination that a change of custody was warranted—Mother's smoking and her cohabitation with her boyfriend. We will first address these two factors and then discuss the remainder of the record to determine whether the evidence supports a change of custody.

First, Mother challenges the court's finding that she smoked in the home with Drake L. even though he had been diagnosed with respiratory problems. Mother claims that there is no evidence that Drake L. was diagnosed with respiratory problems. Mother admitted in her testimony at trial that she smoked at home around Drake L. and that his doctor had taken him off "medicine which helps with asthma and breathing" in 2006. Father acknowledged in his testimony that Drake L. had not been diagnosed with asthma. However, Father testified that Drake L. came home from visits with Mother "smelling like smoke to the point where it stinks up the whole car and gives me an instant headache." Father further testified that Drake L. appeared to be affected by the smell of cigarette smoke to the degree that "his allergies and sinuses are all acted up, sneezing, coughing, that type of thing." Although the trial court's finding that Drake L. had been diagnosed with *current* respiratory problems is not substantiated by evidence in the record, the effect of Mother's smoking on Drake L. is certainly a relevant factor that the court properly considered.

Second, Mother questions the court's reliance on the fact that she allowed her boyfriend to stay overnight with her while Drake L. was present after the court's February

1, 2008 order prohibiting such behavior. Courts may properly consider a parent's non-marital sexual activities in the context of a custody decision. *Earls v. Earls*, 42 S.W.3d 877, 890 (Tenn. Ct. App. 2000). Cohabitation alone does not provide grounds for an award of custody absent proof that it may adversely affect the child. *Id.* Nevertheless, a parent's sexual conduct can adversely affect a child's well-being, and such conduct can be an important factor in custody determinations. *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *6 (Tenn. Ct. App. Aug. 22, 2008). In the present case, there is no proof that Mother's sexual conduct harmed the child.

Additional evidence in the record bears on the trial court's evaluation of the issue of custody. Mother's testimony indicated that she had changed jobs and residences several times in the past few years. She testified that she had moved at least four times since 2004. At the time of trial, Mother was residing with her husband in a trailer owned by her mother, who had yet to charge them rent. Prior to that, Mother lost her home to foreclosure. In addition, Mother was arrested for DUI and charged with reckless driving. She continued to drive after her license was revoked. Mother was not providing a stable home environment.

There was considerable testimony at trial about time Mother spent in Virginia and Colorado. Mother characterized these stints as "trips," while Father testified that she moved or intended to move there each time. At trial, Mother denied having moved to Virginia but did admit that she had a job opportunity there that she turned down. Her fiancé at the time "got a place in Alexandria," and she and Drake L. stayed with him for two or three weeks. Mother sent Father a letter[5] dated November 30, 2004, in which she gave Father the statutorily mandated[6] sixty-day notice that she and Drake L. were "relocating to the Springfield, Virginia area on or about January 30, 2005." In her letter, Mother noted, "It is necessary for me to relocate, at this time, in order to pursue my career in the leasing and consulting field." This relocation did not work out and Mother and Drake returned to Dickson County.

On another occasion in December 2007, Mother and Drake L. spent a week in Colorado. Mother testified that her purpose in doing so was "[t]o check out my options and possible relocation." Mother adamantly denied that she ever intended to move to Colorado. However, Mother admitted that she sent Father e-mails and text messages telling him she was moving. One text message dated December 17, 2007, states, "We[']re moving to Colorado I need to set up visitation with you. So think about it and let me know." Another text message dated December 22, 2007, states in reference to Drake L., "He don't want to talk

---

[5]Mother denied ever seeing the letter but admitted it was her signature.

[6]Tenn. Code Ann. § 36-6-108.

and he is not coming home next week." Mother's own mother testified that she heard that Mother was moving to Colorado with Drake L. Mother's mother testified that she was so concerned that she contacted Father to see if there was anything he could do to stop her from taking Drake L. While she was in Colorado, Mother and Drake L. stayed with a friend whom she knew had used drugs in the past when the friend was living with Mother and Drake L.

As noted by the court in *Kendrick*, "'[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody.'" *Kendrick*, 90 S.W.3d at 570 (quoting *Blair v. Bandenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)). Determinations regarding custody "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

Mother offers no argument that there was not a material change in circumstance, other than contesting the trial court's findings regarding her smoking and cohabitation, which we have already addressed. Upon review of the record, we have concluded that there is sufficient evidence to support the trial court's decision that a material change of circumstance occurred. In a similar case, this court found that a material change in circumstances existed under the following conditions:

> [M]other has moved several times, living with her mother or friends, or most recently with her new husband in Colorado. She . . . has failed to obtain gainful employment, and had basically lived off of the good graces of others for the past two years. Mother had several relationships with men during that time . . . . Further, the mother took [the child] out of school and "moved" with her to Colorado with no notice to anyone, including the father.

*Villaneuva v. Allen*, No. E2003-01252-COA-R3-CV, 2004 WL 1656387, at *2 (Tenn. Ct. App. July 23, 2004). In *Villaneuva*, this court upheld the trial court's decision that "the sum total of mother's actions after the divorce constitutes a substantial change of circumstances." *Id*. at *1.

The facts of *Villaneuva* are similar to those in the present case. Mother moved with Drake L. at least four times between 2004 and the trial in 2008, plus two other attempts to move out of state. The fiancé for whom Mother moved to Virginia in 2005 was not the man who became her husband in 2008. Mother failed to provide Father the proper statutory notice when she attempted to move to Colorado in 2007. While in Colorado, Mother and

Drake L. lived with a friend who had used drugs when she was living with Mother and Drake L. previously. Additionally, it is undisputed that Mother had a restricted driver's license, but continued to drive in a manner contrary to her restrictions.

The determination of whether a material change in circumstance has occurred is a factual determination. *Adams v. Adams*, No. W2008-00225-COA-R3-CV, 2009 WL 690697, at *12 (Tenn. Ct. App. Mar. 17, 2009). We cannot say the evidence preponderates against the trial court's finding that a material change of circumstance had occurred.

(B) Best Interest

The next step in our analysis is to determine whether a modification of custody is in the best interest of Drake L. We are to consider all relevant factors, including those listed in Tenn. Code Ann. § 36-6-106(a). While a number of these factors are neutral, others weigh in Father's favor. We find the following factors particularly persuasive: (2) the disposition of the parents to provide the child with food, clothing, medical care, education, and other necessary care; (3) the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; and (10) each parent's past and potential for future performance of parenting responsibilities.

Drake L. has lived in a safe and satisfactory environment with Father since December 2007. The testimony at trial from both parties, as well as other witnesses, revealed that Father was the more stable parent. Father worked as an electrician making $19 per hour and worked forty hours per week. He had worked in that position for over three years at the time of trial. He paid $88.12 per month for Drake L.'s insurance coverage, despite the fact that Mother was required to provide such coverage under the parenting plan. Father lived in his own home, purchased six years prior to trial, and was up to date on his mortgage and bills. He owned his own vehicle and had an unrestricted driver's license. Father admitted that he did not pay Mother child support for three weeks in December 2007, but explained that Mother was in Colorado and he did not know where to send the checks. Father testified that he had paid two medical bills on behalf of Drake L., one for $442 and one for approximately $1800.

Mother had lived in several different residences since 2004; she moved or intended to move out of state on two different occasions and failed to notify Father as required by law on one of those occasions. At the time of trial, Mother lived in her mother's trailer and did not pay rent. Mother did not have a steady source of income. At the time of trial, Mother had been working as a substitute teacher for approximately two months. She had yet to receive a paycheck at the time of trial but testified that her pay was $50 per day. She estimated that she had worked nine or ten times in the two-month period. Mother was on

TennCare and food stamps while Father paid for Drake L.'s health insurance, despite the fact that Mother was designated to do so under the parenting plan. For these reasons, the parties' past performance of parenting responsibilities weighs in Father's favor, as does the potential for future performance of those responsibilities.

There was also testimony about each parent's ability to supervise and care for Drake L. Drake L. suffered a serious injury while sliding head first with a stick in his mouth on a play set while under Mother's supervision. Mother testified about an incident in which she chased dogs in her neighborhood with a gun, firing the gun while Drake L. was fishing in the backyard. Mother explained her behavior by likening it to deer hunting. On another occasion, Mother gave Drake L., then six years old, two pocket knives. Mother referenced an occasion in which Drake L. was bitten by a dog while under Father's care.

Additionally, the trial court's consideration of Mother's conduct concerning her boyfriend's overnight visits was appropriate and relevant in light of its prior order prohibiting such conduct. Mother's violation of a court order is pertinent to the best interest determination, under which the court is to consider "all relevant factors." *See* Tenn. Code Ann. § 36-6-106(a).

Given the testimony at trial from both parties and other witnesses, we conclude that the evidence does not preponderate against the trial court's finding that a change in custody was in the best interest of Drake L.

### Determination of Mother's Child Support Obligation

Father argues that the trial court erred in its child support determination. Setting child support is a discretionary matter. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Courts are required to use child support guidelines developed by the Tennessee Department of Human Services "to promote both efficient child support proceedings and dependable, consistent child support awards." *Id.* at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. § 1240-2-4-.01(3)(b), (c). Even with the adoption of the 2005 child support guidelines based upon the income shares model, trial courts retain a certain amount of discretion in their decisions regarding child support, which decisions we review under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

A trial court abuses its discretion only when it applies an incorrect legal standard or when it reaches a decision against logic or reasoning that causes an injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under this standard, we are required to uphold the ruling "as long as reasonable minds could disagree

about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Under this standard, we must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *Huffman v. Huffman*, No. M2008-02845-COA-R3-CV, 2009 WL 4113705, at *8 (Tenn. Ct. App. Nov. 24, 2009) (quoting *Kaatrude*, 21 S.W.3d at 248).

Regarding the income and earning abilities of the parties, the only evidence in the record, which is the only evidence upon which child support can be based, is their sworn testimony at trial. The undisputed testimony of Father was that he made $19.00 per hour and worked forty hours per week. Thus, Father's yearly gross income would be $39,520.00, and his monthly gross income would be $3,293.33. The trial court entered $3,000.00 as Father's monthly gross income on the child support worksheet. Additionally, it was undisputed at trial that Father paid $88.12 per month for health insurance for Drake L., despite the fact that this was Mother's obligation under the parenting plan. The court did not note this amount in the box for "Children's portion of health insurance premium" on the child support worksheet.

The undisputed testimony of Mother was that she had been working as a substitute teacher for approximately two months before the trial, for which she was paid $50.00 per day. Mother had not received a paycheck at the time of trial but estimated that she had worked only nine or ten times in the two-month period. Mother testified that, prior to working as a substitute teacher, she worked as a bartender and earned between $700.00 and $1,000.00 per week. With those earnings figures, Mother's monthly gross income would be between $3,033.33 and $4,333.33. The trial court used $1,247.08 as Mother's monthly gross income. It is unclear what income the trial court used to arrive at this calculation.

We conclude that the trial court's determination of Mother's child support obligation lacks a sufficient evidentiary foundation. Additionally, based on Father's undisputed testimony at trial, the only evidence in the record regarding his earning ability, his monthly gross income is higher than $3,000.00. The child support determination should be set aside and recalculated based on the earning abilities of the parties.

### Retroactive Child Support for Father

The trial court declined to award Father retroactive child support. On appeal, Father claims that he is owed child support from the time Drake L. first came into his physical custody when the court issued a temporary restraining order on December 31, 2007, and when final support was set in the November 4, 2008 order. Mother did not address the issue on appeal.

-11-

Tenn. Code Ann. § 36-5-101(f)(1) provides that a judgment for child support "shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." In Father's December 31, 2007 petition to modify the parenting plan, he not only sought an order declaring him the primary residential parent, but he asked that Mother be ordered to pay child support. That request was eventually denied at the hearing on May 5, 2008.

The trial court made no finding relative to its decision that it was not going to make Mother "pay any support retroactively" and it did not provide any reason for the decision. Parents are obligated to support their children during their minority. Tenn. Code Ann. § 34-1-102(a). An order of support retroactive to December 31, 2007 is consistent with Tenn. Code Ann. § 36-5-101(f)(1) and with the obligation of a parent. Since our statutes support the award of retroactive child support under these circumstances, we reverse the court's refusal to award Father child support retroactive to the date of Father's petition, December 31, 2007, and remand for determination of this amount.

<u>Contempt</u>

In its ruling from the bench and its findings of fact, the trial court held both parties in contempt and fined them $250.00. Father was held in contempt for failure to pay three weeks of child support and Mother was held in contempt for having an overnight visitor of the opposite sex in her home while Drake L. was present, in violation of the court's earlier order.

All courts have the power to punish for contempt, pursuant to Tenn. Code Ann. § 16-1-103. Pursuant to Tenn. Code Ann. § 29-9-102(3), courts can punish for contempt in cases of "willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, *order*, rule, decree, or command of such courts" (emphasis added).

Because the trial court did not specify the type of contempt with which it charged the parties, we must first determine whether the contempt was civil or criminal in nature. "Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). A court imposes civil contempt against one party for the benefit of the other party. *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *3 (Tenn. Ct. App. Dec. 20, 2007). "In a civil contempt action, the remedy imposed by the court upon a finding of contempt is designed to compel compliance with or performance of a court order." *Town of Cornersville v. Harmon*, No. M2003-01061-COA-R3-CV, 2005 WL 229872, at *5 (Tenn.

Ct. App. Jan. 28, 2005). This is in contrast to criminal contempt, which is punitive in nature. *Foster*, 2007 WL 4530813, at *3. In the present case, the trial court found both parties in contempt as punishment for failure to comply with prior court orders. We are therefore dealing with criminal contempt.

Pursuant to Tenn. R. Crim. P. 42(b), a criminal contempt shall be prosecuted on notice. The notice shall:

> (A) state the time and place of the hearing;
> (B) allow the defendant a reasonable time to prepare a defense; and
> (C) state the essential facts constituting the criminal contempt charged and describe it as such.

Tenn. R. Crim. P. 42(b)(1). Adequate notice must be clear and unambiguous to the average citizen. *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006). "Because the same conduct can constitute both civil contempt and criminal contempt and because both contempt proceedings may carry with them the possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt." *Id.* (citing *Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *2-3 (Tenn. Ct. App. Feb. 26, 1997)). The "essential facts" referred to under Tenn. R. Crim. P. 42(b)(1) include those that do the following:

> (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment-not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation.

*Id.* at 13-14.

Mother asserts that the trial court erroneously found her guilty of contempt without the "requisite notice." Mother refers to Tenn. R. Crim. P. 42(b) but does not clarify her stance other than insisting that "there was **no** notice sent to [her]." Father filed a motion for contempt against Mother on February 8, 2008. Father moved the court to hold Mother "in willful and deliberate contempt of this Court's prior Orders" for "having an overnight guest of the opposite sex with whom she was romantically involved staying at her home over night during her residential time with the minor child in this matter." Father prayed the court "to enter an order holding [Mother] in willful contempt of this Courts' order and punishing her accordingly for her actions including incarceration and an assessment of attorney fees in this matter." On February 14, 2008, Mother filed a motion to continue, acknowledging that

Father "has just one (1) week ago filed a motion for contempt to which the Petitioner/mother lacks sufficient time in which to prepare." The court then "reset [the matter] for final hearing on May 5, 2008 at 10:30 a.m. in the Juvenile Court for Dickson County, Tennessee."

Under these circumstances, we conclude that not all of the notice requirements of Tenn. R. Crim. P. 42(b) were satisfied. Mother knew the time and place of the hearing and was allowed reasonable time to prepare a defense, but she was not notified that the motion for contempt was in fact a petition for criminal contempt. Father's motion for contempt did warn Mother than incarceration was a possible punishment, but both civil and criminal contempt carry the possibility of incarceration. *Lamberth v. Lamberth*, No. M2007-00025-COA-R3-CV, 2007 WL 4553003, at *4-5 (Tenn. Ct. App. Dec. 26, 2007); *Long v. McAllister*, 221 S.W.3d at 13. Based on the foregoing, we reverse the decision of the trial court and vacate its order finding Mother in criminal contempt and sentencing her.

Father does not specifically challenge the issue of contempt. However, in discussing the trial court's findings of fact, Father states that "[b]oth parties offered reasons why they did not comply, which both believed justified their behavior and made their failure to comply not willful." Tenn. Code Ann. § 29-9-102(3) requires that any punishment for contempt on the basis of disobedience with a court order be willful. Father admits that while he failed to comply with the court's previous order, his noncompliance was due to his not knowing where to send three weeks of child support payments when Mother was in Colorado. As the trial court noted, Father may not have known where to send the payments at the time they were due, but he certainly knew where to send them upon Mother's return to Tennessee. We cannot say that the evidence preponderates against the trial court's finding of contempt.

The trial court erroneously ordered Father to pay a fine of $250.00, however. Tenn. Code Ann. § 29-9-103 limits the amount that circuit, chancery, and appellate courts may fine individuals for contempt to $50.00. Juvenile courts are subject to the same limit as circuit, chancery, and appellate courts by virtue of Tenn. Code Ann. § 37-1-158. The juvenile court did not specify the number of acts for which the parties were being punished. The logical conclusion with the imposition of a $250.00 fine is that the court determined that each party was guilty of five contemptuous acts. But Father was specifically cited for three missed weeks of child support at the hearing. Further, there is some discrepancy as to the amount of the fine imposed by the trial court. The transcript from the final hearing held on May 5, 2008, reflects that the court imposed a $250.00 fine on the parties. In its November 4, 2008 order, however, the court instituted a $50.00 fine. Finally, in the October 6, 2009 findings of fact, the court again stated that it was imposing a $250.00 fine. In accordance with Tenn. Code Ann. § 29-9-103, we reverse the imposition of the trial court's $250.00 fine with regard to Father's contempt and impose a $50.00 fine.

-14-

Attorney Fees

Father requests attorney fees on appeal. Pursuant to Tenn. Code Ann. § 27-1-122, an appellate court is authorized to award attorney fees on appeal when it appears "that the appeal from any court of record was frivolous or taken solely for delay." After considering the issues raised by Mother in this case, we do not find this to be a frivolous appeal and decline to award Father any additional attorney fees and costs incurred on appeal.

CONCLUSION

For the reasons set forth above, the decision of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE