# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 11, 2000 Session

## CASSANDRA LYNN LIPSCOMB  v.  JOHN DOE

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**Nos. 81763-8 T.D., 85203-8 T.D.     Hon. D'Army Bailey, Judge**

---

**No. W1997-00132-SC-R11-CV - Filed November 30, 2000**

---

The primary issue in this case is whether a plaintiff properly initiates suit pursuant to the "John Doe" provisions of the uninsured motorist statutes when (1) the plaintiff is aware that the driver of the other vehicle is one of several persons, but (2) the plaintiff does not actually know which of the other possible drivers was responsible for the accident.  The trial court dismissed the original "John Doe" complaint, finding that because the plaintiff was aware the other driver was one of three people, the other driver was not "unknown" within the meaning of the "John Doe" provisions.  The trial court also denied the plaintiff's motion to amend her complaint pursuant to Tennessee Rule of Civil Procedure 15 and Tennessee Code Annotated section 20-1-119.  The Court of Appeals affirmed the dismissal of the "John Doe" complaint, holding that because the plaintiff was not entitled to a remedy against the actual uninsured motorists, then she was also without a remedy against her insurance carrier.  Upon review of the record and the applicable legal authority, we hold that the plaintiff's suit was properly commenced under the "John Doe" provisions of the uninsured motorist statutes.  The judgment of the Court of Appeals is reversed, and this case is remanded to the Shelby County Circuit Court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the**
**Court of Appeals Reversed; Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which, E. RILEY ANDERSON, C.J., and ADOLPHO A. BIRCH, JR., J., joined.  JANICE M. HOLDER, J., filed a dissenting opinion.  FRANK F. DROWOTA, III, J., not participating.

A. Wilson Wages, Millington, Tennessee, for the appellant, Cassandra Lynn Lipscomb.

Fred P. Wilson, Memphis, Tennessee, and Stuart A. Wilson, Memphis, Tennessee, for the appellee, Amerisure Companies.

John A. Day, Nashville, Tennessee, and John D. Wood, Nashville, Tennessee, for amicus curiae, Tennessee Trial Lawyers Association.

**OPINION**

On the early morning of September 24, 1995, the plaintiff, Cassandra Lynn Lipscomb, completed her night-shift at work and ate an early breakfast with several of her friends. At about 5:00 a.m., the plaintiff started her trip home to Memphis, and at some point during this journey, her car was struck from behind by another car. This other car struck the plaintiff several more times before finally forcing her off of the road. The other car had three occupants, one of whom went to the plaintiff's car and shot the plaintiff in the chest through the car window. After stealing the plaintiff's money and her cellular phone, the three individuals left the plaintiff to die on the side of the road.

After her attackers left, the plaintiff, who apparently did not realize that she had been shot, ran to a nearby phone to call the police. While dialing the phone, she saw blood coming from her chest, causing her to collapse into unconsciousness. Arriving shortly thereafter, the police rushed the plaintiff to the hospital, where doctors discovered that the bullet was lodged between her heart and lungs. The plaintiff remained hospitalized for a week and was released.

Within days of the plaintiff's shooting, officers of the Memphis Police Department arrested three individuals believed to be the persons involved in the plaintiff's accident and shooting. These three individuals, Antonio Chaney, James Logan, and Cory Dyson, were charged with attempted murder and aggravated robbery. In a later criminal proceeding arising out of this episode, Cory Dyson apparently admitted to being the driver of the car causing the plaintiff's accident.[1]

On October 7, 1995, the Memphis Commercial Appeal ran an article containing an interview with the plaintiff following her release from the hospital. The newspaper article also listed the names and addresses of three individuals arrested and charged with the plaintiff's robbery and attempted murder. About a month after the printing of the article, the plaintiff contacted her uninsured motorist carrier, Amerisure Companies, and informed an agent of Amerisure of the names of the suspects arrested and charged with her attack. In addition, the plaintiff told the Amerisure agent that the names and addresses of her alleged assailants were contained in the October 7 Commercial Appeal article, and she faxed a copy of the article to Amerisure.

On September 24, 1996, the plaintiff filed suit under the uninsured motorist statutes claiming damages sustained in her attack, which occurred exactly one year earlier. Pursuant to Tennessee

---

[1] The record in this case does not contain the actual statements made by Dyson in this regard, nor does it contain other evidence from Dyson's trial collaborating the veracity of his alleged statement. The record also does not reveal whether Dyson or any one of the other defendants were convicted of any crime resulting from this episode.

Code Annotated section 56-7-1206(b), she named "John Doe" as the nominal defendant, alleging that the accident was "caused by an unknown driver who left the scene of the accident." The plaintiff, who made no specific mention of Chaney, Logan, or Dyson in her allegations, also forwarded a copy of the complaint and summons to Amerisure.

Amerisure filed an answer in its own behalf as the plaintiff's uninsured motorist insurer, and alleged that the "name of the driver of the [other] vehicle was known or should have been known to the plaintiff prior to the filing of the lawsuit . . . ." Pursuant to Tennessee Rule of Civil Procedure 36, Amerisure also requested that the plaintiff admit, among other things, that she knew (1) that an article appeared in the Commercial Appeal on October 7, 1995 which contained the names and addresses of her attackers; (2) that the Memphis Police Department arrested and charged these individuals with her attack after investigation of the accident; and (3) that the plaintiff knew "the names and addresses of the person or persons who struck the rear of [her] car and shot [her] on September 24, 1995."

In her response to the requests for admission, the plaintiff admitted the existence of the Commercial Appeal article and that the Memphis police arrested and charged the persons mentioned in the article. The plaintiff specifically denied, however, that she knew who actually drove the car the morning of her attack. In response to the last request for admission, the plaintiff stated: "Denied. I still do not know for sure who was driving the car. I honestly [believe] that Antonio Chaney was driving[,] but I believe in Court that Cory Dyson said he was driving."

On December 5, 1995, Amerisure filed a motion to dismiss the complaint, alleging among other things, that "the plaintiff has failed to comply with the requirements of [Tennessee Code Annotated section] 56-7-1201 et seq." More specifically, Amerisure argued that because the plaintiff was aware that the driver of the other car was one of three people, the "John Doe" provisions of Tennessee Code Annotated section 56-7-1206 could not be properly used. The plaintiff then moved to amend her complaint pursuant to Tennessee Rule of Civil Procedure 15 and Tennessee Code Annotated section 20-1-119 to allege a cause of action against Dyson, Logan, and Chaney as defendants. The amended complaint asserted that the "[p]laintiff, after diligent inquiry and effort has been unable to ascertain for sure the driver of the vehicle occupied by the Defendants. Plaintiff believes that one of the Defendants was driving[,] but in Criminal Court, a different Defendant [was] alleged to have been driving."

On February 13, 1997, Amerisure filed motion to dismiss any claims asserted by the plaintiff against Dyson, Logan, and Chaney, and by consent of the parties, the trial court consolidated all motions pending before it. After holding hearings on the issues presented by the motions, the trial court granted Amerisure's motion to dismiss the plaintiff's original complaint on October 31, 1997 for improper use of the "John Doe" procedures. The trial court also denied the plaintiff's motion to amend the complaint pursuant to Rule 15 or section 20-1-119.

The Court of Appeals affirmed the judgment of the trial court in all respects. Addressing the amendment issue first, the court held that Rule of Civil Procedure 15 could not be used to amend the

complaint because Dyson, Logan, and Chaney were not given notice of the pendency of the suit "within the applicable statute of limitations or within 120 days after commencement of the action" as required by the rule. Moreover, the court held that section 20-1-119 could not be used to assert a claim against Dyson, Logan, or Chaney, because the statute "is applicable only when the plaintiff is unaware of the fault of the third party at the time the plaintiff filed his or her complaint." As to the proper use of the "John Doe" procedures, the Court of Appeals held that the plaintiff's "John Doe" complaint was properly dismissed because the plaintiff had no remedy against the driver(s) of the other car. The court then reasoned that the "John Doe" procedures could not give a plaintiff greater rights against the insurance carrier than the plaintiff would have against the uninsured motorist. The Court of Appeals did not address whether the plaintiff's "John Doe" complaint was properly filed in the first instance.

The plaintiff then requested, and we granted, permission to appeal on the following issues: (1) whether the plaintiff's "John Doe" suit was properly dismissed; and (2) whether the trial court properly denied the plaintiff's motion to amend her original complaint to add additional defendants pursuant to Rule of Civil Procedure 15 or Tennessee Code Annotated section 20-1-119. For the reasons given herein, we hold that the plaintiff's initial "John Doe" suit was properly filed. Because this issue is dispositive of the other issues in this case, we reverse the judgment of the Court of Appeals and remand this case to the Shelby County Circuit Court for further proceedings consistent with this opinion.

## STANDARD OF APPELLATE REVIEW

In this case, we are asked to decide questions involving the proper scope of the uninsured motorist statutory scheme, as well as issues concerning the scope of Tennessee Rule of Civil Procedure 15 and Tennessee Code Annotated section 20-1-119. Because issues of statutory construction are questions of law, see Wakefield v. Crawley, 6 S.W.3d 442, 445 (Tenn. 1999); Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999), we review the issues in this case *de novo* without any presumption that the trial court's legal determinations were correct, see Lavin v. Jordon, 16 S.W.3d 362, 364 (Tenn. 2000); Wells v. Tennessee Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999); Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

Tennessee Code Annotated section 56-7-1206(b) (1994) allows a plaintiff to file a "John Doe" action in order to recover damages from his or her uninsured motorist policy for injuries caused by an "unknown" owner or operator of another motor vehicle. Before a plaintiff may recover in a "John Doe" action under this section, however, the owner or operator of the other vehicle must be "unknown," and the plaintiff must satisfy the three requirements listed in section 56-7-1201(e) (1994). This section reads as follows:

(e)    If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, the insured shall have no right to recover under the uninsured motorist provision unless:

(1)(A) Actual physical contact shall have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured; or

(B)    The existence of such unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle;

(2)    The insured or someone in the insured's behalf shall have reported the accident to the appropriate law enforcement agency within a reasonable time after its occurrence; and

(3)    The insured was not negligent in failing to determine the identity of the other vehicle and the owner or operator of the other vehicle at the time of the accident.

Amerisure essentially argues that because the plaintiff was aware that the driver or operator of the other vehicle was among a known universe of drivers, then the other driver was not "unknown" within the meaning of the uninsured motorist statute. Conversely, the plaintiff argues that because she does not actually know of the identity of the other driver and because the driver's identity is still at issue in this case, the suit was properly initiated under the "John Doe" procedures. According to the plaintiff's interpretation, the fact that the potential universe of drivers has been narrowed does not mean that the other driver is "known" within the meaning of the uninsured motorist statutes. We agree.

Our primary purpose in construing statutes is "to ascertain and give effect to the intention and purpose of the legislature." See, e.g., Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000). "Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997). When the language of the statute is clear and unambiguous, then this Court usually applies the plain language of the statute to resolve the issue. See, e.g., State v. Nelson, 23 S.W.3d 270, 271 (Tenn. 2000). Where the plain language of the statute does not directly address the issue or leads to an absurd result, however, this Court will look beyond the language of the statute and adopt a reasonable construction that provides for harmonious operation of the laws. See State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); Fletcher v. State, 951 S.W.2d 378, 382 (Tenn. 1997).

The plain language of the statute is not determinative of the issue in this case. Neither section 56-7-1206(b), nor section 56-7-1201(e), explicitly defines the phrase "unknown motorist."

As indicated by section 56-7-1201(e), the legislature probably intended that an "unknown motorist" be one whose identity is not discoverable after reasonable investigation. Indeed, this conclusion is strengthened by the fact that the General Assembly has elsewhere required "diligent inquiry" before permitting the conclusion that a person is "unknown."[2] Despite this conclusion, though, the issue still remains whether a motorist remains "unknown" for purposes of the "John Doe" provisions when, after reasonable inquiry and investigation, the plaintiff has narrowed the possible universe of drivers but has no actual knowledge of the identity of the driver of the other vehicle.

Where the language of the statute does not speak to the precise issue, courts should "give consideration to the purpose, objective and spirit behind the legislation." See Dorrier v. Dark, 537 S.W.2d 888, 892 (Tenn. 1976). This Court has previously recognized that the purpose of each of the three requirements of section 56-7-1201(e) is "to eliminate fraudulent claims [against an insurer] based [upon allegations of] a phantom driver." Hoyle v. Carroll, 646 S.W.2d 161, 162 (Tenn. 1983) (discussing section 56-7-1201(e)(1)(A) specifically). See also Fruge v. Doe, 952 S.W.2d 408, 411 (Tenn. 1997) ("The high standard of proof required by [section 56-7-1201(e)(1)(B)] . . . obviously was intended by the legislature as a safeguard against bogus claims arising from one-vehicle accidents."). Although the General Assembly was obviously concerned that plaintiffs are not without an adequate remedy against unknown tortfeasors, this concern was carefully balanced in the uninsured motorist statutes with protections for insurance carriers against fraudulent claims. As such, when determining whether the driver of the other vehicle in this case was "unknown" at the time the suit was originally filed, we should be mindful that the purpose of section 56-7-1201(e) was to eliminate fraudulent claims against a plaintiff's insurance carrier.

With this purpose in mind, we conclude that no intent to defraud can be inferred where an insured diligently discovers information on possible operators of the other vehicle, and where the insured communicates this information directly to the insurer within a reasonable time before filing suit. Consequently, the failure of the plaintiff to rename the possible drivers in the complaint is not materially prejudicial in any way. Because the plaintiff in this case informed Amerisure of the possible—though not certain—identity of the other driver who caused her accident, the insurer had an adequate basis from which to begin investigation and preparation for litigation. The plaintiff's failure to rename these individuals in her complaint, especially when such naming would amount to some degree of speculation, did not deprive Amerisure of any notice or opportunity to present a defense beyond that normally present in a "John Doe" action. If, and when, the identity of the other driver actually becomes known through the course of litigation, then the parties are free to proceed under the procedures outlined by the General Assembly in section 56-7-1206(e).

---

[2] See, e.g., Tenn. Code Ann. § 29-18-115(a)(4)-(5) (1980) (requiring the plaintiff to make "diligent inquiry" before allowing a person to be unknown so as to dispense with personal service of process in forcible entry and detainer actions); Tenn. Code Ann. § 21-1-203(a)(4)-(5) (1994) (requiring the plaintiff to make "diligent inquiry" before allowing a person to be unknown so as to dispense with personal service of process in chancery court actions); Tenn. Code Ann. § 54-14-103(a)(3) (1998) (requiring petitioner requesting an easement or right of way to diligently inquire as to the identity of the owner of affected lands).

We are reluctant to adopt the position advocated by Amerisure, which would have us hold that the plaintiff must name all persons within the possible universe of drivers before an action is proper under the uninsured motorist statutes. It appears to be uncontroverted from the record that (1) the plaintiff acted with due diligence in uncovering the identity of the possible drivers of the other car which caused her accident; (2) the plaintiff has no actual knowledge of the identity of the owner or operator of the other vehicle; and (3) the plaintiff acted reasonably in communicating her findings to her insurance company a full nine months before filing suit. To dismiss the plaintiff's suit for failing to name all possible defendants, in the absence of prejudice to the insurer, improperly shifts the focus of the inquiry from diligent discovery to the failure to name all other possible drivers.[3] We decline to strictly focus upon the pleadings of the case without looking to the larger purposes underlying section 56-7-1201(e), which are to prevent fraudulent claims by the plaintiff against his or her uninsured motorist carrier.

We are also reluctant to adopt the approach advocated by the dissent in this case, which concludes that because the plaintiff "honestly believed" that a specific individual, such as Chaney, was the driver of the other car, she was not entitled to "abandon[] the traditional rules of pleading" in favor of invoking the "John Doe" procedures. The dissent apparently ignores that the jury is not bound to accept as true the plaintiff's "honest belief" as to the identity of the other driver, and in ignoring this potentially critical fact, the dissent turns a blind eye to the plaintiff's plight if the jury were to determine that her suspected driver was not the actual driver.

This very concern was expressed by the Georgia Court of Appeals in Smith v. Doe, 375 S.E.2d 477 (Ga. Ct. App. 1987). In Smith, the plaintiff was the victim of a hit-and-run accident, and although the plaintiff did not actually know the identity of the other driver, several witnesses identified the other driver from photographs. In the subsequent suit for damages under his uninsured motorist policy, the plaintiff named "John Doe" as the nominal defendant, and in an alternative count, he alleged the suspected driver as the person responsible for the accident. The insurer then successfully moved to dismiss the "John Doe" complaint, arguing that the other driver was not "unknown" as evidenced by the plaintiff's alternative count. In reversing the dismissal, the Georgia Court of Appeals stated the plaintiff's quandary as follows:

> If a jury should find against the appellant, that would establish that [the named party] was not the tortfeasor. That being so, the identity of the tortfeasor would be unknown, but the earlier grant of summary judgment to John Doe would foreclose a judgment against an unknown tortfeasor. [The a]ppellant would then be unable to obtain the judgment against the tortfeasor which is a condition precedent to recovery against the uninsured motorist carrier.

---

[3] A much different situation would be presented if the plaintiff in this case knew of the possible drivers but did not inform her insurer. In such a case, the legislature's concerns with prevention of fraudulent claims would not be minimized, and a different result may therefore be compelled.

Smith, 375 S.E.2d at 479.  As such, even though the identity of the other driver was reasonably suspected, the court permitted the plaintiff to allege alternative counts of liability against both "John Doe" *and* the suspected, though not certain, driver.

We agree with the rationale of the Georgia Court of Appeals in Smith, and we choose to follow a similar course.  As such, where the plaintiff has no actual knowledge of the identity of the other driver, but the universe of suspected drivers has been narrowed through the plaintiff's reasonable investigation, the prudent plaintiff should allege *alternative* theories of liability against "John Doe" *and* the suspected driver(s).  A trial court should then dismiss a "John Doe" complaint only when the identity of the other driver is no longer at issue.  In this way, plaintiffs are able to protect themselves against the possibility that the jury could determine that someone other than the specific individuals named in the complaint is at fault, and the goal of the General Assembly to provide remedy against uninsured motorists is furthered.[4]

Although the plaintiff in this case did not allege alternative theories of liability in her original complaint, we disagree with the dissent that complete dismissal is the appropriate remedy for this shortcoming.  The fact still remains (1) that the identity of the other driver is the subject of some dispute, notwithstanding the plaintiff's suspicions, and (2) that the insurer in this case has not been prejudiced in any material way by the plaintiff's failure to allege an alternative count of liability against Chaney.  Dismissal the plaintiff's "John Doe" complaint under these circumstances is unreasonably harsh as it would unduly restrict the scope of the uninsured motorist statutes and would reach a result not contemplated by the General Assembly.

This Court has previously recognized that the uninsured motorist statutes reflect the "intention of the General Assembly to permit the insured to pursue, insofar as possible, [his or her] ordinary tort remedy against the uninsured motorist."  Cavalier Ins. Corp. v. Osment, 538 S.W.2d 399, 403 (Tenn. 1976).  Section 56-7-1206 specifically is remedial in nature, see Hutchison v. Tennessee Farmers Mut. Ins. Co., 652 S.W.2d 904, 906 (Tenn. Ct. App. 1983), and this Court traditionally gives a liberal construction to remedial statutes, so long as the legislative intent is not disturbed and the result is not clearly contrary to the language of the statutes, see, e.g., Dailey v. State, 225 Tenn. 472, 477, 470 S.W.2d 608, 610 (1971).  Allowing the plaintiff to pursue her "John Doe" suit under the unique facts of this case in no way interferes with the legislature's legitimate concerns of fraud prevention, and because the statute does not directly address this issue, our result today is not plainly contrary to the language of section 56-7-1201(e).  We therefore conclude that the plaintiff properly commenced suit in this case under the "John Doe" provisions of the uninsured motorist statutes.

---

[4] This is precisely the route attempted by the plaintiff, albeit unwittingly, when she attempted to amend her "John Doe" complaint to include an alternative theory of recovery against the suspected drivers, Dyson and Chaney.  Apparently, the dissent would deny the plaintiff the opportunity to assert an alternative cause of action against "John Doe" even if the identity of the other driver was not actually known and is still a fact in issue.  We simply do not believe that the General Assembly intended to force the plaintiff into the dissent's all-or-nothing scenario in which the possibility exists that she could be denied an adequate remedy merely for the sake of neatness in pleading.

The Court of Appeals in this case reasoned that because the plaintiff could not assert a cause of action against the driver of the other car,[5] then she was also without a remedy against her insurer. Respectfully, however, this analysis is incomplete for all practical purposes, because it fails to take into account the effect of section 56-7-1206(e) on the pleading process. This section states that

> [i]n the event the uninsured motorist's whereabouts is discovered during the pendency of the proceedings, an alias process may issue against the uninsured motorist. In such a case, the uninsured motorist shall be allowed a reasonable time within which to plead to the original process, and then the case may proceed against the uninsured motorist as if the motorist was served with process in the first instance.

Tenn. Code Ann. § 56-7-1206(e).

Significantly, the General Assembly has provided that when "the uninsured motorist's identity and whereabouts are discovered during the pendency of the proceeding," then section 56-7-1206(e) "shall govern the proper course of action following such discovery." See Tenn. Code Ann. § 56-7-1206(b). With the use of this language, it is clear to us that the General Assembly intended to abrogate application of Rules of Civil Procedure 3 and 15 when the plaintiff seeks to amend a "John Doe" complaint upon discovery of the identity of the "John Doe" defendant. See Lady v. Kregger, 747 S.W.2d 342, 345 (Tenn. Ct. App. 1987).[6] Because the plaintiff has a "reasonable time within which to plead to the original process" once the identity of the "John Doe" motorist becomes known, expiration of the time limits in Rules 3 and 15 cannot affect the plaintiff's remedy against the newly identified motorist under an action that was properly commenced in the first instance.[7]

_____

[5] The Court of Appeals found that the statute of limitations had run against the three possible drivers of the other car and that the complaint was amended outside of the time limitation in Rule of Civil Procedure 15. Consequently, the Court of Appeals ruled that because the plaintiff could not maintain an action against the actual driver of the other car, she could not maintain an action against her insurer.

[6] The Court of Appeals in Lady v. Kregger, reasoned that because rules of civil procedure are "laws," they are "subject to being superseded in the same manner as statutes." 747 S.W.2d at 345. Although Lady only addressed service of process under section 56-7-1206(e), its reasoning applies with equal strength to formal amendment of the pleadings.

[7] In reaching its conclusion, the Court of Appeals in this case relied upon the unreported decision in Gafford v. Caruthers, No. 91C-2709, 1994 WL 420917 (Tenn. Ct. App. Aug. 12, 1994). In Gafford, the plaintiff filed suit against a number of identified defendants alleged to have contributed to a car accident, and after the running of the statute of limitations, the plaintiff also filed suit against a "John Doe" defendant. The Court of Appeals held that because the statute of limitations had run against the "John Doe" defendant, then the plaintiff could not maintain an action against her uninsured motorist carrier.

In this case, however, the "John Doe" complaint was properly filed within the applicable statute of limitations, and it otherwise met all of the criteria of section 56-7-1201(e). When a "John Doe" action is properly commenced and the identity of "John Doe" is later discovered in the course of litigation, section -1206(e) allows the plaintiff a "reasonable time" to amend the pleadings and to affect service of process on the "John Doe" defendant. Because the Gafford plaintiff did not properly commence the "John Doe" action in the first instance, that case is clearly not applicable to the issue in this case, and the Court of Appeals erred in relying upon Gafford to affirm dismissal of the plaintiff's

(continued...)

Therefore, we conclude that the Court of Appeals improperly affirmed the dismissal of the plaintiff's "John Doe" complaint.

## AMENDMENT OF THE COMPLAINT

Because we hold that the "John Doe" procedures were not improperly used by the plaintiff in this case, we need not reach the issues of whether the trial court improperly denied the plaintiff's motion to amend her complaint pursuant to Tennessee Rule of Civil Procedure 15 or Tennessee Code Annotated section 20-1-119. In the course of further proceedings, the parties may use the provisions of Tennessee Code Annotated section 56-7-1206(e) to pursue litigation against other parties.

## CONCLUSION

Although the facts of this case are rather unique, we hold that a plaintiff may properly commence an action under the "John Doe" provisions of the uninsured motorist statutes, Tenn. Code Ann. §§ 56-7-1201(e), 56-7-1206(b), when: (1) the plaintiff satisfies the requirements of section 56-7-1201(e), including undertaking reasonable efforts to identify the owner or operator of the other vehicle; (2) the plaintiff does not actually know the identity of the owner or operator of the other vehicle at the time of filing the "John Doe" action; and (3) the plaintiff has notified her insurer, before commencing the "John Doe" action, of the reasonable efforts taken to discover the identity of the other owner or operator and of the results of the investigation.

Although both parties in this case have apparently narrowed the universe of possible drivers of the other vehicle, the identity of the other driver is still at issue, and he remains the subject of some dispute. Accordingly, because the plaintiff took reasonable steps to discover the identity and addresses of the possible drivers, and because the plaintiff communicated this information to her insurer a full nine months before she filed suit, we conclude that the plaintiff properly commenced suit under the "John Doe" procedures of the uninsured motorist statutes. The judgment of the Court of Appeals is reversed, and this case to the Shelby County Circuit Court is remanded for further proceedings consistent with this opinion.

Costs of this appeal are assessed to the appellee, Amerisure Companies.

_____
WILLIAM M. BARKER, JUSTICE

---

7 (...continued)
"John Doe" complaint.