# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 2, 2021 Session

## THE CITY OF CLEVELAND v. THE HEALTH SERVICES AND DEVELOPMENT AGENCY, STATE OF TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 20-1153-I     Patricia Head Moskal, Chancellor**

_____

### No. M2021-00396-COA-R3-CV

_____

This appeal concerns opposition by the City of Cleveland, Tennessee ("the City") to an application by Middle Tennessee Treatment Centers, LLC, d/b/a Cleveland Comprehensive Treatment Center ("CCTC") to operate a nonresidential, substitution-based treatment center for opiate addiction within the City. The City filed a petition for declaratory judgment in the Chancery Court for Davidson County ("the Trial Court") against the Tennessee Health Services and Development Agency ("the Agency") seeking to have the certificate of need granted for CCTC revoked on grounds that CCTC failed to provide proof of service upon the City by certified mail, return receipt requested, in contravention of Tenn. Code Ann. § 68-11-1607(c)(9)(A). CCTC intervened in the case. CCTC and the Agency ("Defendants," collectively) filed motions to dismiss. After a hearing, the Trial Court granted Defendants' motions to dismiss for failure to state a claim. The City appeals. We hold, *inter alia*, that the purpose of the notice provision in Tenn. Code Ann. § 68-11-1607(c)(9)(A) is to afford the relevant officials an opportunity to participate in an Agency hearing on whether a certificate of need is granted; proof of receipt is required. We, therefore, reverse the judgment of the Trial Court and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Douglas S. Johnston, Nashville, Tennessee, for the appellant, the City of Cleveland.

William N. Helou, Nashville, Tennessee, for the appellee, Middle Tennessee Treatment Centers, LLC, d/b/a Cleveland Comprehensive Treatment Center.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Sue A. Sheldon, Senior Assistant Attorney General, for the appellee, the Tennessee Health Services and Development Agency.

## OPINION

## <u>Background</u>

On November 20, 2020, the City filed its Petition for Declaratory Judgment in the Trial Court against the Agency. As this case was disposed of on Defendants' motions to dismiss, we set out the facts as alleged in the City's petition. In its petition, the City alleged as follows, in part:

> 5.) Pursuant to TCA 68-11-1602(2) a "Certificate of Need" is a permit granted by the Agency to any person for the establishment or modification of a health care institution, facility, or covered health service, at a designated location.
> 6.) Some time prior to May 10, 2020 Acadia Healthcare and Middle Tennessee Treatment Centers, LLC combined to own and operate an Opioid Treatment Program which they called the Cleveland Comprehensive Treatment Center (CCTC).
> 7.) CCTC is described as "a nonresidential substitution-based treatment center for opiate addiction" and is to be located at 3575 Keith St. NW within the municipal boundaries of Cleveland, TN.
> 8.) On or about May 10, 2020 the CCTC made its application for a Certificate of Need (CON) to the Agency.
> 9.) TCA 68-11-1607(c)(9)(A) requires a special form of notice to be sent to certain specified elected officials whenever a nonresidential substitution-based treatment center for opiate addiction applies for a CON. In particular, the statute requires notice to be sent to several enumerated elected officials, including the mayor of the municipality within which the center is to be located, within ten days of its application. The notice must be mailed by certified mail, return receipt requested.
> 10.) TCA 68-11-1607(C)(9)(C) states, "An application subject to the notification requirement of this subdivision (c)(9) shall not be deemed complete if the applicant has not provided proof of compliance with this subdivision (C)(9) to the agency."
> 11.) The purpose of the requirements both for the mailing of a notice of the CON application by certified mail, return receipt requested and for the submission to the Agency of proof of compliance is to ensure not only that

-2-

the notices have been sent but that the specified and enumerated elected officials have actually received such notice, and, therefore, that those elected officials can participate, should they choose to do so, at an Agency hearing on the application.

12.) During the period of May and June, 2020, the City of Cleveland closed its offices to the public due to concerns regarding COVID-19.

13.) On or about May 19, 2020 CCTC purportedly sent letters to various elected officials by certified mail, return receipt requested, including one addressed to Mayor Kevin Brooks, Mayor of the City of Cleveland, at his office address.

14.) Neither Mayor Brooks nor any authorized agent for Mayor Brooks ever received or signed for the letter notice purportedly mailed by CCTC.

15.) The documents submitted by CCTC to the Agency as its proof of compliance include at least three return receipts which are blank; that is, there is no signature either of the proposed recipient or of any authorized agent. One of those blank return receipts is for the letter supposedly sent to Mayor Brooks.

16.) Although Mayor Brooks was generally aware of the proposal and had participated in some early discussions about the idea, the Mayor was not aware that CCTC had submitted an application for a CON because he never received the required letter providing notice and, thus, was not aware that the Agency had scheduled a hearing on the application for its August 2020 meeting.

17.) Had Mayor Brooks received the statutorily required notice, he would have appeared before the Agency to oppose the granting of a CON. The Mayor was denied that opportunity because of CCTC's failure and, therefore, the Mayor, acting in his official capacity by and on behalf of the City of Cleveland, was prejudiced by CCTC's failure.

18.) In late June of 2020 Mayor Brooks was scheduled to meet with CCTC representatives but was unable to participate because he was feeling unwell. Mayor Brooks was subsequently hospitalized for approximately ten days with COVID-19.

19.) On August 26, 2020, the Agency approved CCTC's application for a CON.

20.) Prior to September 10, 2020, Mayor Brooks became aware that the CCTC had been approved for a CON.

21.) On or about October 2, 2020 the City submitted its Petition for a Declaratory Order to the Agency and provided a copy by electronic means to counsel for the CCTC on that date.

22.) TCA 68-11-1619(3) provides the Agency the power to revoke a CON "whenever... [t]he decision to issue a certificate of need was based, in whole

or in part, on information or data in the application which was false, incorrect, or misleading, whether intentional or not..."

23.) The information submitted by CCTC to the Agency was, in part, false, incorrect, or misleading in that the submissions implied that all the statutorily enumerated elected officials had been notified of CCTC's application, when, in fact, they had not.

24.) The statutory language of TCA 16-11-1607 (c)(9)(A) contains nothing that would excuse CCTC from providing proof of actual receipt of required notices, as, for example, is contained in TN. R. Civ. Proc. 5 ("service by mail is complete upon mailing") or in TCA 29-26-121(a)(4) which also requires notice by certified mail, return receipt requested but also states, "it is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective".

25.) On October 28, 2020, the Agency took up the City's Petition for a Declaratory Order but refused to issue any declaratory order.

Wherefore, premises considered, petitioner prays:

1.) For a declaration that the statutory language of TCA 68-11-1607(c)(9)(A) means what it says, that the submission by CCTC to the Agency was not complete because it lacked the required proof of compliance; and, that therefore, the certificate of need to CCTC was improvidently granted and must be revoked;

2.) For all costs and for reasonable attorneys' fees, if applicable;

3.) For such other and further relief as appropriate.

In January 2021, CCTC filed a motion to intervene, which the Trial Court granted. Defendants filed motions to dismiss for failure to state a claim; the Agency also moved to dismiss for lack of subject matter jurisdiction. The Trial Court heard Defendants' motions to dismiss.

In March 2021, the Trial Court entered its final order. The Trial Court denied the Agency's motion to dismiss for lack of subject matter jurisdiction. However, the Trial Court granted Defendants' motions to dismiss for failure to state a claim. The Trial Court held as follows, in relevant part:

> The City's declaratory judgment action against the Agency is brought under the UAPA, Tenn. Code Ann. § 4-5-225. Prior to bringing an action in chancery court for declaratory judgment relating to action taken by a state agency, a party must first petition the agency "for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223(a). If the agency

refuses to issue a declaratory order, the petitioner may apply for a declaratory judgment under § 4-5-225. *Id.*, § 4-5-223(a)(2).

Section 4-5-233(d) directs each agency to "prescribe by rule the form of such petitions [for declaratory orders] and the procedure for their submission, consideration and disposition." *Id.*, § 4-5-223(d). The Agency has promulgated the following administrative rule establishing a thirty-day deadline for filing a petition for declaratory order involving Agency action on a specific project or issue:

> (1) Any affected person may petition The Agency for a declaratory order, as provided in T.C.A. § 4-5-223, as to the interpretation, validity, or applicability of a statute or rule within the primary jurisdiction of the Agency….
> * * *
> (3) In the event the petition for declaratory order arises out of The Agency's action on a specific project or issue, the petition for declaratory order shall be filed within thirty (30) days of the date of The Agency meeting a[t] which the action at issue was taken.

Tenn. Comp. R. & Regs. 0720-13-.04 (Rev. Feb. 2017).

Applications for certificates of need for health services and facilities in Tennessee are governed by Tenn. Code Ann. § 68-11-1607, which provides, in pertinent part, as follows:

> (a) No person may perform the following actions in the state except after applying for and receiving a certificate of need for the same:
> > (1) The construction, development or other establishment of any type of health care institution; …

For the specific type of project at issue here, the certificate of need statute imposes the following notice requirement:

> (c)(9)(A) Within ten (10) days of the filing of an application for a nonresidential substitution-based treatment center for opiate addiction with the agency, the applicant shall send a notice to the county mayor of the county in which the facility is proposed to be located; and the mayor of the municipality, if the facility is proposed to be located within the corporate

-5-

boundaries of a municipality; by certified mail, return receipt requested, informing those officials that an application for a nonresidential substitution-based treatment center for opiate addition has been filed with the agency by the applicant.

\* \* \*

(C) An application subject to the notification requirement of this subdivision (c)(9) shall not be deemed complete if the applicant has not provided proof of compliance with this subdivision (c)(9) to the agency.

Tenn. Code Ann. § 68-11-207(a)(1) and (c)(9). An agency is statutorily authorized to revoke a certificate of need where, among other grounds, "[t]he decision to issue a certificate of need was based, in whole or in part, on information or data in the application which was false, incorrect, or misleading, whether intentional or not." *Id*., § 68-11-1619(3).

The City's Petition for declaratory judgment before this Court, alleges that the Agency's order approving CCTC's certificate of need is invalid because CCTC failed to comply with the notice requirements of § 68-11-1607(c)(9)(A), and requests that the certificate be revoked based on CCTC's submission of false, incorrect or misleading information to the Agency regarding the failure to notify the City's Mayor.

## A. Subject Matter Jurisdiction

The Agency initially asserts that this Court lacks subject matter jurisdiction because the City's underlying petition for declaratory order under the UAPA was not timely filed with the Agency. The timeliness requirement for petitions for declaratory orders before the Agency are prescribed by the Agency's rules under Tenn. Code Ann. § 4-5-322(d). The Agency's rule establishes a thirty (30) day period from the date of the Agency's meeting within which a petition for declaratory order "shall be filed." Tenn. Comp. R. & Regs. 0720-13-.04(3). Based on the allegations of the Petition, the Agency approved CCTC's certificate of need on August 26, 2020, but the City filed its petition for declaratory order with the Agency on October 2, 2020, more than thirty days after the Agency's approval action. Pet. at ¶¶ 19, 21. The Court finds that the Agency raises a facial challenge to the Court's subject matter jurisdiction based on the factual allegations of the Petition that the City's underlying petition for declaratory order before the Agency was not timely filed. That finding, however, is not necessarily dispositive of the issue raised as to this Court's subject matter jurisdiction. As the Agency notes, there are two statutory prerequisites under § 4-5-225

-6-

for bringing a declaratory judgment action in chancery court: first, the petitioner must have petitioned the agency for a declaratory order under § 4-5-223; and second, the agency must have refused to issue a declaratory order. Tenn. Code Ann. § 4-5-225(b). The facts establishing both of those statutory prerequisites are alleged in the Petition filed with this Court. Thus, the Court preliminarily concludes it has subject matter jurisdiction.

### B. Failure to State Claims for Relief

*1. Noncompliance with Notice Provision*

Both the Agency and CCTC assert that CCTC complied with the notification requirements of § 68-11-1607(c)(9)(A), based on the facts alleged in the Petition. The Agency and CCTC contend that the Petition fails to state a claim for relief for noncompliance with the notice provisions where the City's factual allegations establish such compliance.

In the Petition, the City alleges that CCTC applied for its certificate of need on May 10, 2020, and that CCTC sent letters by certified mail, return receipt requested, to elected officials, including the City's Mayor, on May 19, 2020. Pet. at ¶¶ 8, 13. As a result, the Agency and CCTC contend that the statutory notice was sent within ten days of CCTC's application and CCTC complied with § 68-11-1607(c)(9)(A).

In response, the City argues that the essence of the Petition presents an issue of statutory interpretation of the statutory notice provision. The City claims that because the legislature has specified "the method of the thing to be done"—that is, "shall send a notice ... by certified mail, return receipt requested"—mere proof of mailing without proof of receipt is insufficient under the legislative intent of the statute. In support of this position, the City compares the language in the statutory notice provision for certificates of need with the language used in Rule 5 regarding service of process of complaints under the Tennessee Rules of Civil Procedure and Tenn. Code Ann. § 29-26-121(a)(4) regarding service of process of complaints under the healthcare liability act.

Issues of statutory construction present questions of law. *See Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 506 (Tenn. 2004) (citing *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000)). Courts are to construe statutes to ascertain and give effect to the legislative intent and purpose. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Legislative intent is to be determined based on the natural and ordinary meaning of the language used, without a forced interpretation that limits or extends the meaning of the language. *Id.* When the statutory language is

clear and unambiguous, courts are to apply the plain meaning in its normal and accepted use. *Id*.

Section 68-11-1607(c)(9)(A) plainly states that within ten days of filing an application for a CON for the type of project at issue here, "the applicant **shall send** a notice" to the county mayor and, if applicable, the city mayor "**by certified mail, return receipt requested**." The City's interpretation would read into the statute a requirement that the applicant also provide proof of delivery of the notice, thereby extending its meaning.

Based on the plain language of the statute, the Court finds that all that is required under the statute is that the applicant send notice of its CON application to the county and city mayors by certified mail, return receipt requested, and that proof of sending the mailing be provided to the agency. The statute does not also require the applicant to provide proof of receipt by the intended recipients. The Court finds unpersuasive the City's comparison of the language of § 68-11-1607(c)(9)(A), requiring notice, to the language used for service of legal process of a lawsuit under either Tennessee Rule of Civil Procedure 5 or the healthcare liability act. The Court concludes that the City has failed to allege facts sufficient to establish a claim for noncompliance with the notice provision of § 68-11-1607(c)(9)(A) regarding CCTC's application.

## 2. Revocation of the Certificate of Need

Section 68-11-1607(c)(9)(C) provides that the CON application for the type of facility at issue here "shall not be complete" if the applicant has not provided proof of compliance with the notice provision. Section 68-11-1619 empowers the Agency to revoke a certificate of need if the decision to issue the certificate of need was based, among other grounds, on "false, incorrect, or misleading" information. The City asks this Court to declare that CCTC's certificate of need was improvidently granted, for providing false, incorrect, or misleading information regarding CCTC's compliance with the notification statute, and, therefore, must be revoked.

The City's allegation that CCTC provided false, incorrect, or misleading information is necessarily dependent upon its theory of statutory interpretation under the notice provision that proof of receipt by the intended recipient is statutorily required. Having rejected that argument and found that only proof of sending, and not proof of receipt, is required under § 68-11-1607(c)(9)(A), it necessarily follows that CCTC did not provide false, incorrect, or misleading information to the agency regarding its compliance with the notice provision and no grounds for revocation of the certificate are sufficiently alleged.

CCTC suggests that the proper remedy for the City to pursue was an appeal of the grant of the CON as a contested case under § 68-11-1610, and its request for a declaration that the CON "was improvidently granted and must be revoked," is artful pleading to avoid the fifteen-day limitations period for a CON appeal under § 68-11-1610(a). CCTC further argues that only the Agency is statutorily empowered to revoke a CON rather than the Court. It [is] unnecessary to address either of these arguments, in light of the Court's interpretation of the notice provision and CCTC's compliance. The Court concludes that the City has failed to state a claim for relief for revocation of CCTC's certificate of need.

The City timely appealed to this Court.

## **Discussion**

The City raises two issues on appeal, which largely overlap. We restate and consolidate the City's issues into the following single issue: whether the Trial Court erred in dismissing the City's petition on grounds that the City failed to allege facts sufficient to establish a claim of noncompliance with the notice provision of Tenn. Code Ann. § 68-11-1607(c)(9)(A) with respect to CCTC's application. Defendants raise a separate issue of whether the Trial Court erred in concluding that it had subject matter jurisdiction to consider the City's petition. CCTC raises an additional separate issue of whether the City lacks standing.

Our Supreme Court has discussed the standard of review applicable to motions to dismiss for failure to state a claim as follows:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action.

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal quotation marks and citations omitted). In addition, in *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000), our Supreme Court set forth the standard of review applicable to motions to dismiss for lack of subject matter jurisdiction. The High Court stated:

> A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. Subject matter jurisdiction involves the nature of the cause of action and the relief sought, and can only be conferred on a court by constitutional or legislative act. Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness.

*Northland Ins. Co.*, 33 S.W.3d at 729 (internal citations omitted).

We first address CCTC's issue of whether the City lacks standing. CCTC notes that declaratory relief sought from an agency decision is limited to "affected persons." This Court has explained thusly:

> "[U]nder the Administrative Procedures Act, a court may issue a declaratory judgment if an 'affected person' seeks that relief and if the rule or order, or its application, interferes with, impairs, or threatens to interfere with the person's rights." *Boles v. Tenn. Dep't of Corr.*, No. M2000-00893-COA-R3-CV, 2001 WL 840283, at *2 (Tenn. Ct. App. July 26, 2001); *see also Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 456 (Tenn. 1995) ("The Administrative Procedures Act [ ] allows an 'affected person' to petition the Davidson County Chancery Court for a declaratory judgment regarding the legal validity of a statute, rule, or agency order in limited circumstances."). Persons seeking a declaratory judgment pursuant to section 4-5-225 must allege that a private interest or personal right has been affected by the enforcement of a statute, rule, or order. *Reid v. Lutche*, No. M1997-00229-COA-R3-CV, 2001 WL 55783, at *4 (Tenn. Ct. App. Jan. 24, 2001).

*Calfee v. Tenn. Dep't of Transp.*, No. M2016-01902-COA-R3-CV, 2017 WL 2954687, at *5 (Tenn. Ct. App. July 11, 2017), *no appl. perm. appeal filed*.

In its reply brief, the City argues that CCTC waived this issue by failing to raise it below. Indeed, failure to raise an issue below generally means that issue may not be raised for the first time on appeal. *E.g.*, *Blankenship v. Anesthesiology Consultants Exchange, P.C.*, 446 S.W.3d 757, 760 (Tenn. Ct. App. 2014). However, upon our consideration of the issue, we do not find the City lacks standing. CCTC's characterization of the City's interest in this action is too narrow. As pointed out by the City, "[t]he City, by and through its mayor, had a statutory right to receive a notice of the certificate of need application and to appear before the board in regard to the CON." Whether the City received notice compliant with Tenn. Code Ann. § 68-11-1607(c)(9)(A) is very much at issue. In other words, the City is not merely an unrelated outsider to this matter—it squarely is an "affected person" with standing. This issue is without merit.

We next address Defendants' issue of whether the Trial Court erred in concluding that it had subject matter jurisdiction to consider the City's petition. The Agency points to the following rule: "In the event the petition for declaratory order arises out of The Agency's action on a specific project or issue, the petition for declaratory order shall be filed within thirty (30) days of the date of The Agency meeting at which the action at issue was taken." Tenn. Comp. R. & Regs. 0720-13-.04(3). Here, the Agency approved CCTC's application on August 26, 2020; the City filed its petition for a declaratory order with the Agency on October 2, 2020, more than thirty days after approval. According to the Agency, the City effectively failed to "petition[] the agency for a declaratory order," as required by Tenn. Code Ann. § 4-5-225(b) (2021). CCTC adds an additional argument under this issue. CCTC contends that, insofar as the City's petition amounted to an appeal of the grant of the certificate of need rather than a petition for an order revoking the certificate, it failed to appeal within fifteen days as required by Tenn. Code Ann. § 68-11-1610(a). CCTC asserts further that the City failed to object during the application process and failed to exhaust its administrative remedies. In response, the City states that it failed to act sooner on all of these fronts because it did not receive statutorily-compliant notice.

In the first place, we disagree with CCTC that there is any ambiguity in the nature of the City's petition. The City's petition states that it is a petition for declaratory judgment. There is nothing about the petition that would lead us to disregard what it purports to be and classify it as something else. Second, Tenn. Code Ann. § 4-5-225(b) (2021) provides: "A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." Both of these prerequisites were met in this case. Whether the City acted timely in its bid to oppose the grant of a certificate of need to CCTC may be relevant to the success or lack thereof of the City's case, but it does not implicate the Trial Court's subject matter jurisdiction to consider the City's petition in the first place because the essential statutory prerequisites were met.

-11-

Therefore, we hold that the Trial Court had subject matter jurisdiction to consider the City's petition. We affirm the Trial Court's ruling in this respect.

The final issue we address is whether the Trial Court erred in dismissing the City's petition on grounds that the City failed to allege facts sufficient to establish a claim of noncompliance with the notice provision of Tenn. Code Ann. § 68-11-1607(c)(9)(A) with respect to CCTC's application. The City argues that proof of receipt was required. Defendants argue, and the Trial Court held, that proof of receipt was not required. At the time of the underlying events,[1] Tenn. Code Ann. § 68-11-1607(c)(9)(A) provided:

> Within ten (10) days of the filing of an application for a nonresidential substitution-based treatment center for opiate addiction with the agency, the applicant shall send a notice to the county mayor of the county in which the facility is proposed to be located; the state representative and senator representing the house district and the senate district in which the facility is proposed to be located; and the mayor of the municipality, if the facility is proposed to be located within the corporate boundaries of a municipality; <u>by certified mail, return receipt requested,</u> informing those officials that an application for a nonresidential substitution-based treatment center for opiate addiction has been filed with the agency by the applicant.

Tenn. Code Ann. § 68-11-1607(c)(9)(A) (West July 1, 2016 to May 25, 2021) (emphasis added). In addition, "[a]n application subject to the notification requirement of this subdivision (c)(9) shall not be deemed complete if the applicant has not provided proof of compliance with this subdivision (c)(9) to the agency." Tenn. Code Ann. § 68-11-1607(c)(9)(C) (West July 1, 2016 to May 25, 2021). We are presented with an issue of statutory construction. As our Supreme Court has instructed:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness. *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and

---

[1] Tenn. Code Ann. § 68-11-1607 was amended in 2021. However, the amendments are not relevant to our disposition of the issues on appeal.

unambiguous, we enforce the statute as written; we need not consider other sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

The City points to certain examples where, in contrast to Tenn. Code Ann. § 68-11-1607(c)(9)(A), a Tennessee statute or rule has clarified that proof of receipt is not required for notice sent by certified mail. For instance, Tenn. Code Ann. § 29-26-121(a)(4) provides that a plaintiff in a health care liability lawsuit can prove compliance with the notice provisions by establishing that notice was filed timely by certified mail, return receipt requested; nevertheless, the statute clarifies that "[i]t is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective." Tenn. Code Ann. § 29-26-121(a)(4) (Supp. 2021). Elsewhere, Tennessee Rule of Civil Procedure 5.02(1) provides that "[s]ervice by mail is complete upon mailing." The City observes that no such clarifying language can be found in Tenn. Code Ann § 68-11-1607(c)(9). For their part, Defendants argue that Tenn. Code Ann § 68-11-1607(c)(9) is unambiguous; there is no express requirement for proof of receipt. Defendants argue, and the Trial Court held, that requiring proof of receipt would read a provision into the statute that does not exist. Respectfully, we disagree with the Trial Court and Defendants' interpretation.

Our General Assembly must have meant something by including in Tenn. Code Ann. § 68-11-1607(c)(9)(A) the language "by <u>certified mail, return receipt requested</u>, informing those officials that an application for a nonresidential substitution-based treatment center for opiate addiction has been filed with the agency by the applicant." (Emphasis added). Based on our reading of the statute, we conclude that the General Assembly intended to ensure that the relevant local and state officials are informed that the application has been filed so as to allow them to have an opportunity to have input on, and participate in, an Agency hearing regarding whether a certificate of need is granted.[2] Here, in contrast to examples found elsewhere in Tennessee law, there is no qualifying language to the effect that service is complete upon mailing. In order for the unqualified statutory requirement of "return receipt requested" to have meaning, return receipt *needs* to be returned. Otherwise, the "return receipt requested" language is meaningless. This is

---

[2] This does not mean that the officials statutorily entitled to notice possess a veto over the granting of a certificate of need.

especially so given the statute's stated intent of informing those officials of the application's filing. Furthermore, a scenario could arise where, as is alleged here, a certificate of need is granted while an official statutorily entitled to notice is left in the dark, a scenario contrary to legislative intent. We also note that the General Assembly provided for the same notice sent to the "mayor of the municipality" also be sent "by certified mail, return receipt requested" to "the state representative and senator representing the house district and the senate district in which the facility is proposed to be located…." We have no difficulty determining that the clear intent of our General Assembly was to ensure that its designated House and Senate members actually received this required notice concerning his or her district. As the same notice language applies to both the designated members of our General Assembly and the mayor of the municipality, our interpretation of the statute must be the same as to both. The fact that the City acknowledged being "generally aware" of the proposal to establish CCTC is of no consequence. That is distinct from knowing specifically that an application for a certificate of need was submitted. The City's petition sufficiently alleged facts that could entitle it to relief—namely, that the notice requirements of Tenn. Code Ann. § 68-11-1607(c)(9) were not satisfied by CCTC. We, therefore, reverse the judgment of the Trial Court, and remand for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed one-half against the Appellee, Middle Tennessee Treatment Centers, LLC, d/b/a Cleveland Comprehensive Treatment Center, and one-half against the other Appellee, the Tennessee Health Services and Development Agency.

_____
D. MICHAEL SWINEY, CHIEF JUDGE